IN RE CONSOLIDATED RENDERING CO.

January Term, 1907.

Present: TYLER, MUNSON, and WATSON, JJ., and WATERMAN, Superior
Judge.

Opinion filed May 11, 1907.

*Contempt of Court—Power to Punish—Review—Habeas Corpus
—Certiorari—Writ of Error—No. 75, Acts 1906—Constitu-
tional Law—Searches and Seizures—Equal Protection of
Laws—Unjust Discrimination—Witnesses — Self-Criminat-
ing Evidence—Nature of Privilege—Method of Asserting—
Subpoena Duces Tecum—Effect—Foreign Corporations—
Status—Evidence—Access to Corporate Books.*

V. S. 1610, providing that one confined for contempt of a court, chan-
cellor, judge, or other magistrate shall be entitled to a writ of
habeas corpus returnable to the Supreme Court, has no applica-
tion to a case where the penalty imposed is merely a fine.

Where contempt proceedings are taken to the Supreme Court by ex-
ceptions duly filed under V. S. 1625-1626, and the exceptions are
sufficient to bring up the full record and to raise all questions
that the respondent desires to present, a writ of certiorari is un-
necessary.

Since V. S. 1625, providing that questions of law determined by the
county court may be taken to the Supreme Court by exceptions,
makes no reference to writs of error, their use remains as at com-
mon law,—not appropriate except where the county court exer-
cises its jurisdiction substantially according to the course of
the common law.

The only question that can arise on a review of a contempt proceeding
in the Supreme Court is as to the jurisdiction of the lower court,
since the power to punish for contempt is a discretionary power
inherent in courts of law, and, if fairly exercised in a case within
the jurisdiction of the lower court, its findings of fact are con-
clusive, and no review can be had.

No. 75, Acts 1906, providing that any corporation doing business in this State shall, upon notice, produce before any court, grand jury, tribunal, or commission acting under the authority of the State, all books, correspondence, memoranda, papers and data which may contain any account, reference, or information concerning the proceedings or subject of inquiry pending before the body, and which may at any time have been made or kept within the State and are in the custody of the corporation, or which relate to any transaction within the State or with parties residing or having a place of business therein; and providing for the manner of service of the order to produce and for punishment for contempt in case of non-compliance, is not in violation of the eleventh article of the Constitution of Vermont, relating to the search or seizure of property and the certainty of description in warrants therefor, since the Act restricts the order to such books and papers. as contain information concerning the subject of inquiry, and leaves it for the tribunal to determine only what books and papers are needed and to describe them in the order as far as practicable.

An order issued under No. 75, Acts 1906, directing a corporation to produce before a grand jury certain books and papers, and sufficiently describing them, has the force of a subpoena *duces tecum*, and where it requires no search by the corporation to find the books and papers demanded, and entails no hardship to produce them, the order is not for an unreasonable search and seizure in violation of the eleventh article of the Constitution of Vermont, which does not abridge the power of a court to compel the production of documentary evidence in any proceeding therein.

When service was made, it was the duty of the respondent to cause the books and papers required by the order to be produced as therein directed, or give a reasonable and truthful excuse for their non-production, and *then* it could raise any objection to their use in evidence.

It is the duty of any witness summoned upon a subpoena issued in behalf of the State in a criminal case to appear according to the summons, without preliminary tender of his fees; hence an order issued under No. 75, Acts 1906, directing a corporation to produce certain documentary evidence before a grand jury, and contempt proceedings for a violation thereof, were not an infringement of the eleventh article of the Constitution of Vermont relating to the search and seizure of property, on account of the fact that no

tender was made of the fees and expenses for appearing before the court with the required evidence.

The common law immunity guaranteed by that provision of our State Constitution which declares that no one can be compelled to give criminating evidence against himself, is a privilege personal to the witness and, if relied upon, must be asserted by the witness himself in court and under oath; and even then, the statement of the witness that the answer will tend to criminate him is not necessarily conclusive, but presents a question for the determination of the court.

A witness cannot disobey a subpoena *duces tecum* and refuse to produce the books and papers when called for, and still claim through his attorney, that such books and papers, if produced, would tend to criminate him.

Where a witness has been duly summoned, it is his duty to attend at the time and place named in the subpoena, and if required to produce documentary evidence, it is his duty to produce it, if it is in his possession or control.

Whether the documentary evidence is relevant, or, if produced would tend to criminate the witness, is for the court, and not for the witness, to determine.

An order issued against a corporation, under No. 75, Acts 1906, directing it to produce certain documentary evidence before a grand jury, and contempt proceedings against the corporation for a violation thereof, were not contrary to the tenth article of the Constitution of Vermont, providing that no one can be compelled to give criminating evidence against himself, since the corporation was not a party nor charged with any crime, but simply summoned to appear before the grand jury with the documentary evidence, where the privilege could have been claimed if desired.

In a contempt proceeding for failure to obey an order to produce certain documentary evidence before a grand jury, where the petition in the proceeding contains no allegation relating to any claim of privilege or any incriminating testimony, the question of privilege on account of the tendency to incriminate cannot be raised by a motion to dismiss the petition, since a motion to dismiss is not issuable, and reaches only defects apparent on the face of the strict record.

The grand jury is a part of the court, and any question of privilege can be raised before that body, and reported to the court for its action.

Where a foreign corporation has complied with all the requirements of law relative to its .doing business in this State, and is thus actually doing business here under the law of this State, in respect of all business done here, and all matters connected therewith, it is as much amenable to the laws of this State, and in duty bound to obey them, as though it were a domestic corporation.

If a foreign corporation doing business in this State under the authority of its laws, in anticipation of being called to produce its books and papers in a criminal proceeding against our own citizens, removes such books and papers from this to another state, it cannot be permitted to plead that act as an excuse for not obeying a subpoena to produce them.

The books and papers of a foreign corporation doing business in this State under authority of its laws, which are required as evidence in legal proceedings here, though they have been removed to another state by the corporation, are still, in contemplation of law, within the jurisdiction of our courts, since the corporation is within that jurisdiction and the books and papers are within the control of the corporation.

No. 75, Acts 1906, is not in violation of the Fourteenth Amendment of the Federal Constitution, as discriminating between corporations and natural persons, and denying to the former equal protection of the laws, it merely removes the prior discrimination and now requires of a corporation what could before be demanded of a natural person by subpoena *duces tecum.*

No. 75, Acts 1906, is not in violation of the Fourteenth Amendment of the Federal Constitution, as depriving the corporation of its property without due process of law, by authorizing a fine for contempt in case of refusal to produce documentary evidence when ordered, since the proceedings indicated for punishing the contempt are in accordance with the ordinary. mode prescribed by law in such cases and adapted to the end to be attained.

Nor does No. 75, Acts 1906, take property without due process of law, in that it does not provide compensation for time, trouble, and expense in producing documents and papers from other states, since the law provides fees and mileage for witnesses, and any

loss from inadequate fees is incident to the legitimate exercise
of the powers of government for the public good.

Under No. 75, Acts 1906, the county court has jurisdiction to fine a
foreign corporation doing business in this State, for contempt in
disobeying an order to produce its books and papers before a
grand jury in an investigation of an alleged breach of a criminal
statute by citizens of this State in their dealings with said cor-
poration in Vermont.

PROCEEDING FOR CONTEMPT.    Chittenden County, September
Term, 1906.    *Rowell*, C. J., presiding.    The respondent was ad-
judged guilty of contempt and fined $3,000.    Exceptions by re-
spondent; also petition for writ of certiorari, and petition for a
writ of error.

The Consolidated Rendering Company is a corporation or-
ganized under the laws of the State of Maine, having its prin-
cipal business office at Boston, Massachusetts, and carrying on a
meat and rendering business plant at Burlington, Vermont,
under the name of the Burlington Rendering Company.

At the September Term, 1906, of the Chittenden County
Court, the grand jury of that county had under consideration
certain charges against four persons named, members of the
board of cattle commissioners of the State of Vermont, for having
sold diseased meat for food purposes, at said Burlington, con-
trary to the statute of this State.    October 10, 1906, said com-
pany was served by an officer with a copy of an order of said
court to produce before the grand jury on the 17th day of said
October, "all books of account, letters, accounts, memoranda,
data, copies of bills, statements and copies of statements at any
time made or kept or had by said company at said Burlington,
which contain any account with, statement of, or relating to, or
concerning any deal or business with any of the following parties
since January 1st, 1904, (naming the four persons) or with the
cattle commissioners of the State of Vermont, or with the State
of Vermont; also all books, vouchers and receipts issued by your
company, or by any officer or employee of your company at
said Burlington since January 1, 1904, to any of the above
named parties; also all statements, correspondence, data, memo-
randa, books, vouchers, and receipts, made or kept at said Bur-
lington, which relate to the payment by your company to any of

the above parties on the following dates and for the amounts specified opposite each date'',—and here followed some over forty dates and amounts, commencing January 4, 1905, and ending June 29, 1906, and ''to be used as might be legally admissible before the grand jury relative to the matter of complaint pending, and there to be investigated before said grand ·jury in which'' (said four persons) ''are charged with having unlawfully sold diseased meat for food purposes at said Burlington.''

The alleged contempt was for the refusal to produce the documentary evidence. The proceedings are sufficiently set forth in the opinion.

*R. E. Brown, W. B. C. Stickney, J. J. Enright, Freedom Hutchinson,* and *Albert S. Hutchinson* for the respondent.

Questions of law arising in contempt proceedings are reviewable in a higher court in at least two classes of cases:

1st. Where the contention is made that the court below was without jurisdiction to make its order and render its judgment, because the statute under which it purported to act was unconstitutional and void.

2d. In cases where the act of contempt charged is innocent or justifiable, and the proceedings below were so irregular as to be against law, and to give the court no proper jurisdiction.

Contempt proceedings may be reviewed by a bill of exceptions. *In re Cooper,* 32 Vt. 252; *Androscoggin etc. Co.* v. *Androscoggin Co.,* 49 Me. 392.

Contempt proceedings may also be reviewed by writ of certiorari. *In re Chetwood, Petitioner,* 165 U. S. 443; *People* v. *Kelly,* 24 N. Y. 74; *Hummels' Case,* 9 Watts 416; *Com.* v. *Newton,* 1 Grant 453; *State* v. *Judges,* 32 La. Ann. 1256; *Harrison* v. *State,* 35 Ark. 458; *Dunham* v. *State,* 6 Iowa 245; *People* v. *Turner,* 1 Cal. 156; *Ex parte Field,* 1 Cal. 187; *Ex parte Biggs,* 64 N. C. 202; *State* v. *Leftwich,* 41 Minn. 42; *Warner* v. *State,* 13 Lea 52.

In the following cases contempt proceedings were reviewed by writ of error: *Telegram Newspaper Co.* v. *Com.,* 172 Mass. 294; *Hurley* v. *Com.,* 188 Mass. 443; *Globe Newspaper Co.* v. *Com.,* 188 Mass. 449; *Hundhausen* v. *Ins. Co.,* 5 Heisk. 702; *Remley* v. *DeWall,* 41 Ga. 460; *Vertner* v. *Martin,* 10 Sm. & M.

103; *Stanart* v. *People*, 3 Scam. 395; *Harnes* v. *People*, 97 Ill. 161; *Railway* v. *Wheeling*, 13 Gratt. 40; *Ingle* v. *State*, 8 Blackf. 574; *Birkley* v. *Com.*, 2 J. J. Marshall 572; *Middlebrook* v. *State*, 43 Conn. 257; *Tyler* v. *Hammersley*, 44 Conn. 393.

The relations of the Rendering Company to the subject of inquiry before the grand jury make it plain that the production of the documents called for might tend to incriminate the defendant or subject it to indictment or prosecution.   *Counselman* v. *Hitchcock*, 142 U. S. 547; *Ballman* v. *United States*, 200 U. S. 186; *Chamberlain* v. *Willson*, 12 Vt. 481; *Janvrin* v. *Scammon*, 29 N. H. 280; *People* v. *Forbes*, 143 N. Y. 219; *Emery's Case*, 107 Mass. 172; *State ex rel. Atty. General* v. *Simmons etc. Co.*, 109 Mo. 118; *People* v. *O'Brien*, 176 N. Y. 351; *In re Cullinan*, 82 App. Div. 445; *State* v. *Slamon*, 73 Vt. 212; *Ex parte Clarke*, 103 Cal. 352; *Ex parte Cohen*, 104 Cal. 524; *Lamson* v. *Boyden*, 160 Ill. 613; *Ex parte Carter*, 166 Mo. 604; *Smith* v. *Smith*, 116 N. C. 386; *Boyle* v. *Smithman*, 146 Pa. St. 255; *Ex parte Wilson*, 39 Tex. Cr. 630.

The statute is in contravention of the eleventh article of our Constitution relating to searches and seizures.   *Boyd* v. *U. S.*, 116 U. S. 616; *Hale* v. *Henkel*, 201 U. S. 43; *In re Pacific Railway Co.*, 32 Fed. 241; *Lester* v. *People*, 150 Ill. 408; *Ex parte Brown*, 72 Mo. 143; *Carson* v. *Hawley*, 82 Minn. 204; *Newberry* v. *Carpenter*, 107 Mich. 567; Cooley, Const. Lim. (7th ed.) 424.

The statute is in conflict with the Fourteenth Amendment of the Federal Constitution, in that it authorizes the depriving a corporation of its property without due process of law, either by taking its books and papers, or by taking its property by way of fine for nonproduction.   *State* v. *Height*, 117 Iowa 650; *West* v. *Louisiana*, 194 U. S. 258.

The statute provides no compensation for the time, trouble, and expense of producing books and papers from other states, and this is taking property for public use without just compensation.   *Woodward* v. *C. V. Ry.*, 180 Mass. 599; *Chicago etc. Co.* v. *Illinois*, 201 U. S. 595; *Wilson* v. *United Traction Co.*, 76 N. Y. Supp. 203; *Blythe* v. *State*, 4 Ind. 525; *Gridley* v. *Bloomington*, 88 Ill. 554; *Webb* v. *Baird*, 6 Ind. 13; *Chicago* v. *O'Brien*, 111 Ill. 532; *State* v. *Jackman*, 69 N. H. 318.

*Clarke C. Fitts,* Attorney General, and *A. L. Sherman,* State's Attorney, for the State.

A subpoena *duces tecum* is a writ of compulsory obligation. *Amey* v. *Long,* 9 East. 475; *Corser* v. *Dubois,* 3 Eng. Com. Law Rep. 101; *Bull* v. *Loveland,* 10 Pick. 9; *Lane* v. *Cole,* 12 Barb. 680.

The findings of fact made by the lower court are conclusive. 1 Grant C. S., Pa. 453; *Water Co.* v. *Court of Fresno Co.,* 93 Cal. 139; *Clark* v. *People* (Ill.) 12 Am. Dec. 177; *Cochran* v. *Ingersoll,* 73 N. Y. 613; *Tyler* v. *Hammersley,* 26 Am. Rep. 471; *Hunter* v. *State,* 6 Ind. 423; *Hayes* v. *Fischer,* 102 U. S. 121; 10 Century Digest, 2587; *Vilas* v. *Burton,* 27 Vt. 60, 22 Am. St. Rep. 417.

Law in its regular course of administration through courts is *due process,* and when secured by a law of the state, the constitutional requirement is satisfied, and that due process is so secured by laws operating on all alike. *Leeper* v. *Texas,* 139 U. S. 462; 2 Kent's Com. 13; *Marchant* v. *R. R. Co.,* 153 U. S. 390.

The prescribing of different modes of procedure, leaving untouched all the substantial protections with which the existing law surrounds the person, are not considered within the constitutional prohibition. *Duncan* v. *Miss.,* 152 U. S. 377.

What is due process of law in the states is regulated by the law of the state. *Walker* v. *Sauvinet,* 92 U. S. 90; *Hayes* v. *Miss.,* 120 U. S. 71; *Miss.* v. *Lewis,* 101 U. S. 22; *Brown* v. *N. J.,* 175 U. S. 175.

Forms of procedure in the state court are not controlled by the fourteenth amendment, provided the nominal rights secured by the amendment are not denied. *Ex parte Reggel,* 114 U. S. 642; *R. R. Co.* v. *Iowa,* 160 U. S. 389; *R. R. Co.* v. *Chicago,* 166 U. S. 226.

Due process of law within the meaning of the fourteenth amendment is secured if the laws operate on all alike and do not subject the individual to the arbitrary exercise of the powers of government. *Giozza* v. *Tiernan,* 148 U. S. 657; *R. R. Co.* v. *Mackey,* 127 U. S. 205; *R. R. Co.* v. *Herrick,* 127 U. S. 210.

WATERMAN, Superior Judge. The respondent has adopted three methods of bringing the case before this court for reviewing the proceedings of the county court. Exceptions were taken to the rulings of the court, which were duly filed; a petition for a writ of certiorari was filed in this Court; and also a petition for a writ of error. It 'is of no importance in this case which of the first two methods is deemed the more appropriate, nor would a discussion of the methods pursued in other jurisdictions be beneficial. We have a statute under which such a case may be taken to the Supreme Court on exceptions, V. S. 1625. It is true our statute, V. S. 1610 to 1612 provides for bringing contempt proceedings before this Court by habeas corpus, but of course that applies only to cases where the relator is actually in confinement for noncompliance with some order of court. It can have no application in a case like this. A writ of certiorari is unnecessary in this case, as the exceptions are sufficient to bring up the full record, and to raise all questions which the respondent desires to present. Section 1625 has no reference to writs of error, hence their use in this respect remains the same as before the law of that section was enacted,—not appropriate except where the county court exercises its jurisdiction substantially according to the course of the common law. *Beckwith* v. *Houghton,* 11 Vt. 602; *Stiles* v. *Windsor,* 45 Vt. 520.

It is conceded by counsel for the respondent that the findings of fact by the court below are conclusive, and the authorities are abundant as to this. It is also conceded that the power to punish for contempt is inherent in courts of law, and their action is not reviewable if within their jurisdiction. The power to punish for contempt is a discretionary power, and must be fairly exercised, and when so exercised in a case within the jurisdiction of the court no review can be had. So really the only question here, is as to the jurisdiction of the court.

The grand jury was engaged in the investigation of an alleged breach of a criminal statute by certain persons in this State, and in the course of those inquiries an order was made upon the respondent company by the court, under the provisions of the statute, to produce the books and papers mentioned in the order. The company produced some books and papers, but not all those required, and the grand jury having reported

to the court the neglect of the company to produce the requisite documents, a complaint was filed by the Attorney General and the company was summoned before the court to show cause why it should not be dealt with for contempt.

These proceedings were had in pursuance of a statute of this State passed by the Legislature at its session held in 1906, the first section of which is as follows:

"Any corporation doing business within this State whether organized under the laws of this or any other State or country, shall, when notice thereof is served upon it according to the provisions of this act, produce before any court, grand jury, tribunal or commission, acting under the authority of this State, all of the books, documents, correspondence, memoranda, papers and data which may contain any account of, reference to, or information concerning, the suit, proceeding, action, charge, or subject of inquiry pending before, or to be heard or determined by such court, grand jury, tribunal or commission, and which have at any time been made or kept within the State of Vermont, and are in the custody or control of such corporation within this State or elsewhere at the time of such notice upon it."

The second section is identical with the first except that the books and papers mentioned are limited to those "which in any way relate to, or contain entries, data or memoranda concerning any transaction within the State of Vermont or with any party residing or having a place of business within the State of Vermont." The third section relates to the manner of service of the order to produce; the fourth provides for punishment for contempt in case of non-compliance with the order, and that execution may issue for the collection of any fine imposed. These sections are all that are of importance in this case.

The respondent claims that the court had no jurisdiction because the statute is unconstitutional. It is claimed that this statute contravenes the provisions of the tenth and eleventh articles of the Constitution of Vermont, and of the fourteenth amendment to the Constitution of the United States.

1. It is insisted by the respondent that the act is in contravention of the eleventh article of the Constitution of Vermont, in that it authorizes a search and seizure of books and papers of a corporation; and also because it compels the production of such books and papers in court without providing compensation

for the time and expense in so doing. It is claimed that the act is not restricted, as it should be, to permitting such books and papers as are admissible, to be called for, but includes all in the custody or control of the corporation.

. The act restricts the order to such as "contain any account of, reference to, or information concerning the suit, proceedings, action, charge or subject of inquiry, pending before, or to be heard by such court." This is about as definite, and limited a provision as could be inserted in an act which could be of general use in its application to all kinds of cases likely to arise. The order in this case was limited to producing such books and papers as contained accounts or entries relating to dealings with the parties being investigated, and especially those containing certain entries specified therein, giving dates and items; to be produced and used "as may be legally admissible as evidence before said grand jury relative to the matter of complaint pending, and then to be investigated by said grand jury," against the persons named.

The act leaves it for the tribunal to determine what books and papers are needed and may be called for, in the order to be issued, and to describe them as far as practicable. The order in this case is not subject to the criticism made by the court in *Carson* v. *Hawley,* 82 Minn. 204, that it is so general that it does not indicate any knowledge on the part of the person demanding documentary evidence, of any book or paper desired. The order indicates that the grand jury had knowledge of the dates and of many items they wished to verify by the books and papers, and these were plainly stated in the order. It required no undue and improper inquisition into the affairs of the company. By comparison with the items and dates given in the order, the books could easily have been found. The court in its findings of fact says: "It is conceded by the defendant company that before and on the 22nd of August last it had in its possession and subject to its control the papers that it was subsequently notified to produce before the grand jury." So it required no search on the part of the company to find them, and its officials or employees knew they had them at that time. It was no hardship, or detriment to their business to require them to be produced. According to the statements made in behalf

5

of the company before the court, they were not needed in carrying on business, for it was asserted by the witness they had been destroyed.  The order was certainly not an unreasonable search or seizure, but a requirement under this statute, reasonably made, for the production of certain specified books and papers, to be used, so far as admissible, before the grand jury; the order to be served by the delivery of a copy.

No objection was made before the grand jury or the court, on account of indefiniteness of description.  The witness who testified in behalf of the company, knew just what was required, and the concession above quoted was made.  If indefiniteness was really an objection, the witness might have stated the difficulty he encountered, in understanding the order, and complying with its terms.  If he was the person delegated by the company to appear and respond to the order, it was his duty to appear and produce the books and papers, or give a reasonable and truthful excuse for their non-production, and then if he desired, or was so advised, could raise any objection to their use in evidence.  *Doe* v. *Kelley,* 4 Dowl. Pr. 273; *Amey* v. *Long,* 9 East 473; Wig. on Ev. §2200, at page 2979.

The proceedings in this case under the statute, were in effect the same as under a *subpoena duces tecum,* which is an ancient writ,—Starkie Ev. 86, note—with this difference, that this statute authorizes the service of the order for the production of books and papers upon the corporation itself, while a *subpoena duces tecum* without the statute would be served upon some officer or employee commanding him to appear and bring with him the documents.  The object sought is the same in both cases, the production of evidence, to be used, so far as admissible, before the court.  When service was made, it was the duty of the corporation to comply with the order.  No force was used or threatened or authorized by the order; no quest was made by the officer.  There was no interference with the business, or with the property rights of the corporation.  We do not think the eleventh article of our State Constitution was intended to interfere with the power of courts to compel, through a *subpoena duces tecum,* or such a proceeding as is authorized by this statute, and was used in this case, the production in any proceeding in court, of documentary evidence.  *Hale* v. *Henkel,* 201 U. S. 43, 73; *Amey* v. *Long,* 9 East 473; *Bull* v. *Loveland,* 10 Pick. 9; *U. S. Express*

*Co.* v. *Henderson,* 69 Iowa 40; Green. Ev. 469 a; 1 Chit. Cr. Law, 577.

There might be a case where such an order and process might be so made, and used in such a manner as to contravene the provisions of that article of the Constitution. The order might be so broad and unlimited, in its scope, as to constitute an unlawful inquisition into the private affairs of the person summoned, or authorize such a search and disturbance of business as to entitle him to protection against it. But that is not the case with these proceedings.

2. The respondent further claims that the proceedings were an infringement of the same article of our Constitution because no tender was made to the company to cover its fees and expenses for appearing before the court with the books and documents. The statute of 5 Elizabeth, chapter 9, §12, provided for summoning witnesses to attend court, and that they should be tendered their expenses, and for a fine for non-attendance, as well as damages to the party injured, and ever since that time statutes in many different jurisdictions have contained provisions for tendering fees to witnesses. There is such a statute in this State. V. S. §1252. But the statute of Elizabeth related only to witnesses in civil cases; so does our own; and so far as we know none of the statutes in the different states contain any provision for tendering fees to witnesses summoned in behalf of the state in criminal cases. There is no such statute in this State, and no such practice has ever prevailed here. Under our laws it is the duty of any witness summoned upon a subpoena issued in behalf of the State in a criminal case to appear according to the summons, without a preliminary tender of his fees. Having performed his duty as a witness, he is then entitled to fees, which are allowed by statute, or by order of the court. He has no right to refuse to attend because his fees are not tendered. It was said by the Duke of Argyle in 1742, that the public has a claim to every man's evidence, and Lord Hardwicke, assenting to this statement, added, "it is undoubtedly true that the public has a right to all the assistance of every individual." This general proposition has been repeated many times, in various courts of England and of this country. The duty to appear upon a state subpoena and give testimony is not conditional on pre-payment of fees. Mr. Wigmore says: "That condition was

never imposed upon the prosecution in criminal cases * * * . That burden (upon a witness to appear without tender of fees) is not considered by the law a hardship in criminal cases.'' Wig. on Ev. §2201; 2 Hawk. P. C. Ch. 46, Sec. 168.

In this State, by order of court, upon a showing by the respondent that he is pecuniarily unable to procure the attendance of his witnesses, the names of his witnesses, limited to the number allowed by the court, may also be inserted in the subpoena in behalf of the State, and in such case the fees are not paid in advance. In many states by statute, fees of witnesses on neither side in criminal cases, need be tendered in advance. No rights of the respondent in this respect under the above named article of our organic law, have been violated. A similar holding was had in *West* v. *State,* 1 Wis. 209, which case will be more particularly noticed later.

3.   It is further contended that the statute and these proceedings are contrary to the provisions of article ten of our Constitution, providing in part * * * ''nor can he be compelled to give evidence against himself,'' because the corporation was ordered to produce the books and papers mentioned, which it now claims would tend to its crimination. When a claim for protection under this provision has been properly ·raised, the courts of this State, and the Federal courts under the fifth amendment to the Constitution of the United States, which is similar, have always given it fair and careful consideration. Such a claim must be presented to the court by the witness, for it is a personal privilege which belongs to the witness alone, and should be made in good faith and under oath. In determining the question here raised it is necessary to notice more fully the proceedings in the court below. Before the grand jury there was an investigation of charges against certain persons, for a breach of a criminal statute of this State. Under the statute of 1906 an order of that court dated October 10, was issued to the company to produce certain books and papers before the grand jury October 17, to be used so far as admissible in that investigation, which was duly served. October 17 the company produced certain books of account and checks, but not all those required, and produced nothing further in response to the notice. October 19 the grand jury reported to the court what the company had done and what it had failed to do, by way of com-

pliance with the order; on the same day the Attorney General filed in court the petition in this case, asking that the company be dealt with for contempt; and on the same day the court issued notice to the company to appear October 30, to show cause why it should not be so dealt with. The company by its attorneys filed a motion to dismiss the petition, first, because the memoranda and papers called for are not legally material and competent evidence in the investigation being made by the grand jury; secondly, because it is sought by said petition to compel said company to bring into this State, for use before said grand jury, papers and memoranda which may tend to criminate said company and render it liable to criminal prosecution; and thirdly, because said statute and the requirements thereof are in contravention of the fourth, fifth and fourteenth amendments of the Constitution of the United States, and of the tenth and eleventh articles of the Constitution of this State. October 30, the day set for hearing on this petition, one of the attorneys of the company filed his own affidavit, sworn to before a notary public, in substance that the papers and memoranda which the company had failed to produce before the grand jury, would if produced in evidence tend to criminate the company and render it liable to criminal prosecution. On the same day the company also filed an answer to the petition, setting forth that during the period covered by the order it kept and filed at its office in Burlington certain papers and memoranda similar to the papers attached to the petition; that on or about August 20 all of the books and papers of the company kept at Burlington relating to the transactions mentioned were sent to the main office of the company at Boston for examination and verification, and long before the service of the order, said papers or memoranda were destroyed, at Boston; that it was unable to find two of the checks called for, and that aside from said papers, memoranda and checks it had produced everything called for in the notice. To this answer the Attorney General filed a replication, denying its truth and joining issue thereon. On testimony introduced, the court made findings of fact, adjudged the company guilty of contempt, and imposed a fine. The court finds from the testimony that Mr. Brigham, manager of the Burlington plant, was in Boston just before August 21 and had a talk with Mr. Heath, the manager of the company, in regard to the business

of the company in Vermont, in connection with the cattle commissioners, and about the time Brigham was in Boston, one Mantor, an employee of the company in Boston, telephoned the bookkeeper in Burlington to bring all the books and papers to Boston, and he did take them all there. And the court finds, notwithstanding the claim of Mantor that the books and papers were destroyed with the exception of those produced before the grand jury, that they were not destroyed; that Mantor knew that the matter was being looked up in Vermont to some extent, and that he sent for the books and papers to be brought to Boston for the very purpose of taking them out of the jurisdiction of this State, and keeping them where he thought they could not be produced. The finding is, in effect, that the testimony and circumstances show that the story of Mantor of the destruction of the books and papers was false, that they were still in existence, and in the custody and control of the company. Nobody testified they were destroyed except Mantor, and on account of the contradictory statements made by him and the suspicious circumstances, the court says he was absolutely discredited. A suspicious circumstance in the mind of the court was that the bookkeeper of the Burlington plant who took the books and papers to Boston has never returned to Vermont; and gave no testimony before the court, in any form. As the court said in its findings, he was the man of all others who knew, and could testify in regard to these matters. The papers would enable the grand jury to trace the history of every animal sold, and without them this would be impossible, and they would be corroborative evidence as against the persons named, in the investigation.

The court further says that Mantor, the only witness who says he saw the books, testified there was nothing there that would incriminate anybody. He was the only witness produced by the company as to this; no witness testified there was anything in them which was incriminating. The court has not found that there was. The substance of these findings by the court is, that the claim of incriminative testimony was not set up by any witness, and was never asserted and maintained by the company in any way previous to the commencement of the contempt proceeding, and then was made by counsel, but not by any witness; and that the witness who testified in regard to the books was dis-

credited. Was the privilege properly and legally claimed by the company?

The first mention of such a claim was in the motion to dismiss. This was after the failure to produce the books and papers, and after the contempt proceedings had been commenced. The motion to dismiss is signed by counsel for the company. The next mention is in an affidavit of one of the attorneys making the naked statement that the papers were incriminating. It is not stated that the affiant had ever seen the books or papers. He makes no statement as to the contents or upon what facts contained in them he bases his opinion or statement that they would be incriminating. A bare expression of opinion, or legal conclusion, without a statement of the facts upon which it was founded may not have had much weight with the court, even if this was the proper method of asserting the privilege.

There has been some difference in the statement of the law as to the privilege of a witness, and its assertion and enforcement, in the courts of England and of this country, but the rule at the present time is quite uniform. When a witness has been duly summoned it becomes his duty to attend at the time and place named in the subpoena. It seems well settled that if he is required to produce documentary evidence by a *subpoena duces tecum* it is his duty to produce what is called for, if it is in his possession or control. There may be, of course, good reasons why the witness is unable to attend, and should be excused, but there is nothing in this case indicating the existence of any excuse for non-attendance by some person duly authorized by the company. The findings of the court are such that no excuse appears for not producing the documents called for. Whether they would be proper testimony to be used in the case, when produced, is not for the witness to say; their relevancy is for the court to determine, and not for him. Rapalje Law of Wit. §302. "But this right of a mere witness to raise the question of jurisdiction in this manner (by a refusal to testify) has not met with the favor of the judges, and in several jurisdictions is virtually denied; *a fortiori* a witness cannot be permitted to refuse to answer a question on the ground that it is irrelevant. To hold that a witness could decide for himself upon the relevancy of a question, against the opinion of the judge presiding, or the officer taking the deposition, would be subversive of all order in judicial

proceedings." Rapalje on Wit. §303. Also in section 304, "The office of the writ of *subpoena duces tecum* extends only to compel the *bringing into court* by a party or witness of books and papers of which he has control, and an inspection of which is deemed to be essential to the proper determination of the issues presented for trial. The writ has no effect upon the question of the admissibility of books and papers so brought in as evidence in the case." Citing: *Bonesteel* v. *Lynde*, 8 How. (N. Y.) Pr. 226; *Mott* v. *Consumer's Ice Co.*, 52 How. (N. Y.) Pr. 244.

"In all cases it is a question for the consideration of the judge at the trial, whether upon the principles of reason and equity,' production should be required under a subpoena." *Amey* v. *Long*, 9 East. 475; *Corson* v. *Dubois*, 1 Holt N. P. 87.

"The question of relevancy is never one for the witness to concern himself with; nor is the applicability of a privilege to be left to his decision. It is his duty to bring what the court requires; and the court can then, to its own satisfaction, determine by inspection whether the documents produced are irrelevant or privileged. This does not deprive the witness of any rights of privacy since the court's determination is made by its own inspection without submitting the documents to the opponent's view, and unless such a mode of determination were employed, there could be no available means of preventing the constant evasion of duty by witnesses." Wig. on Ev. §2200, citing *Amey* v. *Long*, 9 East 473. In that case Lord Ellenborough delivered the opinion and therein Park, Marryatt and Bell, the distinguished counsel for the successful side said: "As the obligation of the witness to answer by parol does not depend upon his own judgment, but on that of the court, the same rule must prevail with respect to his production of documentary evidence. The witness is bound, at all events, to bring with him the paper which he has been subpoenaed to produce; and when it is in court, he may then state any legal or reasonable excuse for withholding it, of which the court will judge."

A witness must obey a subpoena and be sworn; then he may claim his privilege. *In re Ekstein*, 148 Pa. St. 509; *U. S.* v. *Kimball*, 117 Fed. 156.

Many other cases might be cited, bearing on the question of the duty of a witness to obey a subpoena and actually appear, and in case of a *subpoena duces tecum* produce the documentary

evidence called for, but these are sufficient to answer the claim made in the motion to dismiss, that the testimony was not material, and to show beyond question that it is the duty of a witness to respond to a subpoena by appearing, and producing books and papers, leaving all questions which he desires to raise to be settled and determined when he and the evidence demanded are before the court.

The testimonial privilege is purely personal. It can be raised only by the witness himself; whether the testimony is priviliged is for the court to decide. Wig. on Ev. §2296, 2270; *Chamberlain* v. *Wilson*, 12 Vt. 491; *Janvrin* v. *Scammon*, 29 N. H. 280.

It is upon this question that there has been some difference in expression by different courts. In some cases the statement has been so broad that it seemed to give the witness the right to decide whether he would assert the privilege, and also, whether he would answer the question, thus leaving nothing for the court. But the great tendency of modern cases has been such, that a rule seems now to prevail in this country, which has but few exceptions. Rapalje Law of Wit. §266, says:

"The result of a comparison of the adjudications seems to be that the preliminary question, 'can *any* answer, responsive to the question, subject the witness to a criminal prosecution?' must be decided by the court, and not by the witness. If the court holds the affirmative of that question, then the witness has a right to decide whether the answer he would give to the question would have such an effect;" also, "The court will require to be satisfied that the witness is acting an honest part and that he may incur danger by answering; when satisfied of this, he will allow the privilege."

"Where a party calls his adversary as a witness, he has a right to insist on his going on the stand to be sworn, although the counsel for the witness state to the court that he will not answer the questions that will be put to him, as the answers would tend to incriminate him. If the questions have that tendency, the objection must be taken by the party himself on oath." Rapalje on Contempt, 100; *Boyle* v. *Wiseman*, 29 Eng. L. & Eq. 473; Powell's Ev. (4th Ed.) 109.

The question may be lawfully put, however its tendency to draw out self incriminating testimony, and the witness must

decide himself whether he will assert his privilege, or waive it and answer the question. I Green. Ev. §451; 2 Phil. Ev. 783; Whart. Crim. Ev. §465.

Ch. J. Marshall in the trial of Aaron Burr said: "It is the province of the court to judge whether any direct answer to the questions which may be proposed will furnish evidence against the witness." And in this case he also said in substance that if the witness stated under oath that the answer would tend to criminate him he would not be compelled to answer. Taking all he said together, a fair conclusion would be that the privilege must be asserted under oath by the witness, and if his statements are found to be true the court will not compel him to answer.

In *Reg.* v. *Garbett*, 2 Car. & K. 474, the court held that if a witness asserts his privilege and there appears to be ground for believing that his answer would criminate him he is not compellable to answer. In another English case the court held that a merely remote possibility of legal peril to a witness from answering a question is not sufficient to entitle him to the privilege of not answering; that to entitle him to this privilege, the court must see from the circumstances of the case and the nature of the evidence which he is called to give that there is reasonable ground to apprehend danger to the witness from his being compelled to answer; that the danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things; that the position that the witness is sole judge as to whether his evidence would bring him into danger of the law, and that the statement of his belief to that effect, if not manifestly made *mala fide*, should be received as conclusive, is untenable. But that if the fact of the witness being in danger be once made to appear, great latitude should be allowed to him in judging for himself of the effect of any particular question. *Reg.* v. *Boyce,* 1 Best & Smith 311.

There has been some modification of the statement of the law in the opinion of Ch. J. Marshall in the Burr case, as to the right of the witness to judge for himself whether his answer will expose him to prosecution, in a number of American cases, and it is now held more generally, that it is for the court to decide after claim made, by the witness, of his privilege. *Chamberlain* v. *Wilson,* 12 Vt. 491.

Chief Justice Shaw, in *Bull* v. *Loveland,* 10 Pick. 9, said:

"It has been decided, though it was formerly doubted, that a *subpoena duces tecum* is a writ of compulsory obligation, which the court has power to issue, and which the witness is bound to obey, and which will be enforced by proper process to compel the production of the paper, when the witness has no lawful or reasonable excuse for withholding it."

"But of such lawful or reasonable excuse the court at *nisi prius* and not the witness is to judge."

In *State* v. *Thaden,* 43 Minn. 253, Mitchell, J., in delivering the opinion, which contains a very full and clear discussion of the subject, says:

"All the authorities agree to the general proposition that the statement of the witness that the answer will tend to criminate himself, is not necessarily conclusive, but that this is a question which the court will determine from all the circumstances of the particular case, and the nature of the evidence which the witness is called upon to give." This opinion cites with approval the rule laid down by Cockburn, L., C. J., in *Regina* v. *Boyce,* before cited. We understand this is practically the rule in this State.

The respondent here was not a party; was not charged with any crime, but was merely asked to perform its duty as a witness. Being summoned and appearing before the grand jury with the documentary evidence would not be a violation of its constitutional rights. The privilege of a witness could then be claimed or not, as seemed advisable; if not claimed it would be waived.

In *State* v. *Duncan et al.,* 78 Vt. 364, 63 Atl. 225, this Court considered the question of incriminating testimony brought up in a different form. It was upon a demurrer to a plea in abatement to an indictment, alleging that the indictment was found upon testimony of the respondent, criminating himself, which he was compelled to give before the grand jury. It is there said that the privilege is that of the witness and he alone can claim it, and is waived if not seasonably asserted. The plea did not show that the respondent asserted his privilege. The compulsion alleged was held to be a conclusion of the pleader, from the facts, and not justified as stated. In that case the witness appeared and testified before the grand jury, but did not claim his privilege. Here he refused to produce the evidence, and therefore

no question of privilege in regard to it arose before the grand jury or court.

We have called attention to the requirements of the law as shown by the above authorities as to a claim of privilege by a witness, mainly for the purpose of showing the necessity of the claim being made by the witness himself, under oath, and in court, and that the claim having been asserted by the witness must be considered and acted upon by the court. The witness cannot refuse to obey a subpoena, and still claim the privilege that his testimony, if given, would incriminate himself.

Neither can a witness disobey a *subpoena duces tecum* and refuse to produce books and papers called for, and still claim the privilege, that the books and papers if produced, would tend to criminate him. To permit such a course to be taken would be to permit courts of justice to be trifled with, and the course and progress of the law to be obstructed and delayed. The privilege of a witness as to these books and papers was never asserted in any manner allowed or authorized by law. It was not shown or claimed to the court, before the contempt proceedings were commenced, that they would tend to incriminate the corporation, or that the privilege of a witness as to it was claimed. The only excuse made by the witness Mantor was that they had been destroyed, and this was found by the court to be untrue. This being so, the constitutional question does not arise, for the respondent never put itself in a position to raise it.

We do not take the view of the respondent, in argument that the question of privilege was properly raised by the motion to dismiss, and that no such question could have been raised before the grand jury. Such a question of privilege could not be raised by a motion to dismiss the petition. A motion to dismiss is not issuable. It reaches defects only which appear on the face of the pleading to be affected by it. The petition contains no allegation relating to any claim of privilege or relating to any testimony which appears to be incriminating. It sets forth the facts of the order, service, and refusal to produce. The motion to dismiss alleges new matter, the claimed privilege, as the ground for dismissal. No precedent has been shown for this method of making a claim of privilege. Besides, this was *after* the contempt, if any, had been committed, and was an attempted excuse or palliation for what had taken place. The grand jury is a

part of the court; any such question could have been raised before that body, and reported to the court for its action.

This case differs from *Ballman* v. *United States,* 200 U. S. 186. In that case the witness in fact appeared at the time he was ordered by the Court to appear, and asserted his privilege within the time allowed him in which to give his testimony. The witness in this case made no claim of privilege, at any time, or in any manner, and the claim as it was finally attempted to be made by counsel was too late, and not properly asserted.

*Hale* v. *Henkel,* 201 U. S. 43, contains an interesting opinion as to the rights of corporations, and of their officers when called to testify in regard to the transaction of the corporate business, and the privilege of a witness is asserted on the ground that the testimony might be incriminating. It is true that the questions raised in that case are analogous to those relating to visitatorial powers which may be exercised by the State granting the charter, and bear upon the right of the government to investigate the conduct of corporations, in proceedings for breach of the Federal statute, to protect trade and commerce against unlawful restraint and monopolies. But the discussion is illuminating, as clearly setting forth the duties and obligations of corporations to the public, and the right of the State—and in that case the government—to exact full obedience to all reasonable regulations as to the conduct of their business, and full disclosure of all their transactions, in a proceeding in behalf of the government.

Certainly in a case like this, where no right of visitatorial powers is claimed or attempted, but the action on the part of the State is limited to requiring the production of evidence, for use in state proceedings against other persons, it cannot be held that there has been an undue assertion of authority by the State, over a corporation, which by permission of the State is doing business therein.

In the above case it will be noted that instead of the corporation being merely called as a witness in a proceeding upon a complaint against others, it was itself being investigated and its employee who appeared refused to produce its books and papers. While in the view we take of this case it does not become necessary for us to decide whether a corporation has the same right in any case as an individual, to assert a claim of privilege, as a witness, against producing its books and papers,

in a criminal proceeding in behalf of the State, against other persons, we can say at least that before deciding that such a privilege exists in a case like this, we should insist upon its being shown that the assertion of the privilege was made in strict conformity with the law.

4.   We have a statute, regulating the admission of foreign corporations to this State for the purpose of doing business, providing in detail for the necessary steps to be taken before admission.   This statute requires a foreign corporation, before doing business here to procure a certificate of registration from the Secretary of State that it has complied with all the requirements of the law to authorize it to do business in this State; stating the business of the corporation and that it is such as may lawfully be carried on by a corporation incorporated under the laws of this State for such or similar business; and to file with the Secretary of State a copy of its charter, state its place of business and stipulate upon whom service of process against it may be made; and other provisions in detail, Act No. 20, of Acts of 1902, thus placing itself respecting the business done here, upon the same basis as domestic corporations, as to being subject to the jurisdiction of the courts, under our laws.   It has been claimed in argument, that this corporation having been chartered in the State of Maine, was not subject to the law of this State, to the extent of being compelled to produce books and papers which were not then actually in the State.   It is understood from the record before us that this corporation had taken all the steps required by statute, to entitle it to admission to this State, and to the protection of its laws applying to all foreign corporations so admitted.   No question is made that the service of the order upon it was not in accordance with our statute, relating to the service of process upon foreign corporations doing business in this State.

Since the respondent was thus doing business in this State, so far as pertained to the business done here and all matters and things connected therewith, it was and is amenable to the laws of the State and in duty bound to obey them the same as if it were a domestic corporation.   If, in anticipation of being called as a witness or to produce its books and papers, in some proceeding before the grand jury, upon criminal charges against our own citizens, it saw fit to remove them from this to another State,

it should not be permitted to plead its own act, taken for the very purpose of putting them beyond the jurisdiction, as an excuse for not obeying a subpoena and producing them. As a body corporate it was in fact doing business, in Vermont and Massachusetts. Taking the books into Massachusetts was merely shifting them from one hand to the other. They were as much in control of the corporation as before. That is the essential thing, and not the precise locality where they happened to be when called for. The corporation was within this jurisdiction. and the books and papers within its control. No corporation whether foreign or domestic, can evade its testimonial duty, which rests upon it while it is here doing business, by merely sending to the home office, in another state, documents pertaining to said business which are required as evidence in legal proceedings here, and refuse to produce them when required by authority of law. In contemplation of law they are still in this jurisdiction for such purpose, and in control of the corporation doing business here. They are a part of the business of the corporation which is carried on here. They constitute a record of the transactions of that business and belong here, for all legitimate purposes of evidence, when required by our courts.

The right of control and regulation of foreign corporations coming within the State to do business was fully discussed and maintained in *Cook* v. *Howland et al*, 74 Vt. 393, 52 Atl. 973. See also *Osborne & Woodbury* v. *Shawmut Ins. Co.*, 51 Vt. 278. At this time in the history of the progress and development of corporate interests, we should not be inclined to take a backward step as to the rights of the Legislature exercised within proper limits, in the control and regulation of corporations, whether foreign or domestic.

In our opinion neither the statute in question nor the order of the court pursuant thereto requiring the production of the documentary evidence mentioned in the order, violates the provision of the Constitution of this State. No claim based upon the 4th or 5th amendment to the Constitution of the United States is made in this Court, nor could there be successfully, since those amendments are held to have no reference to the states.

5. The claim is also made that the statute is contrary to the fourteenth amendment of the Constitution of the United States, because it arbitrarily discriminates between artificial and

natural persons, denying to the former equal protection of the laws. As before seen, prior to the passage of this act, an individual could by a *subpoena duces tecum* be compelled to do all, by way of producing books, etc., that a corporation can be forced to do, under the provisions of the statute. This statute seems designed for requiring the corporation itself, as the responsible owner, and legal custodian, to produce the documentary evidence mentioned therein, without the necessity of calling upon book-keepers, managers, or other servants, who may, or may not, in fact, have custody or control thereof, at the time notice to produce is given, and to place upon the corporation the responsibility of seeing that such evidence called for, if in its control, is produced. This accomplishes in a direct way the same object which might require much delay and difficulty to accomplish, without the statute, by a *subpoena duces tecum* served upon such individuals as might be supposed to have the evidence in their custody. The statute leaves the corporation to select such officer, agent or employee as it may see fit, to produce the evidence in compliance with the order made. It authorizes the laying of no unjust burdens upon corporations, as distinguished from individuals, and is designed only to compel the production of admissible evidence, to be used in court. The classification made by the statute places all corporations, whether domestic or foreign, in one class, leaving individuals, whether acting severally, as copartners, or as associates, in another class. The general difference existing between natural and artificial persons in this respect, without this statute, makes the classification made a proper one, one that removes the prior discrimination between them, and therefore not in violation of the equality clause of the fourteenth amendment.

6. It is also claimed that the statute in question is in conflict with the fourteenth amendment because it authorizes the court to punish for contempt, in case of refusal to produce such evidence when ordered, as in this case, and thus deprive a corporation of its property by way of a fine, without due process of law.

The question of what constitutes due process of law has been so recently and fully discussed in this State, with reference to decisions in Federal and state courts, that further consideration is unnecessary. *State* v. *Stimpson,* 78 Vt. 124, 62 Atl. 14;

*State* v. *Hodgson*, 66 Vt. 134, 28 Atl. 1089; *Bartlett* v. *Wilson*, 59 Vt. 23, 8 Atl. 321; *Hurtado* v. *California*, 110 U. S. 516; *Hagar* v. *Reclamation Dist.* 111 U. S. 701; *Turpin* v. *Lemon*, 187 U. S. 51. ·

The respondent's contention in this respect is made upon the ground that it was justified in refusing to produce books and papers which might tend to incriminate it, and that this statute requiring their production is unconstitutional.

This proposition is disposed of by what we have previously said in regard to the necessity for appearance and production of documents by a witness, and claiming the privilege when in court, and that it is not for the witness to decide, as to such documents being privileged, but for the court; and as we hold that the claim of privilege was not made as required by law, but that the order was disobeyed, the respondent on common principles stood as a contemnor before the court. The proceedings against it were in accordance with the ordinary mode prescribed by law in such cases and adapted to the end to be attained; the respondent was fully heard respecting the justice of the judgment sought; and the fine imposed was within the discretion of the court. It cannot be said therefore that by the fine it was deprived of property without due process of law.

7. The further objection is made that the statute is in violation of the 14th Amendment, because it provides no compensation for time, trouble, and expense in producing documents and papers in other states and bringing them to this State,—hence a taking of property without due process of law.

By statute witnesses are allowed for travel in the state, and so much a day for attendance upon court. And in state causes extra compensation may be allowed-to witnesses called from without the state when their production has been ordered by a judge of the Supreme Court, or by a judge of the County Court presiding at the trial, to prevent a failure of justice; and such judge may order any necessary evidence at the expense of the state, to prevent a failure of justice, and such compensation shall be fixed by the court before whom the trial is had. V. S. 5396.

In practice this statute has very properly been construed as broad enough to cover such witnesses and evidence required

6

before a grand jury. Since the Act in question contains no special provision touching the fees of witnesses coming before a court or grand jury in obedience to an order issued thereunder, the pay of such witnesses, like that of all others, is governed by the general provisions of the statute upon that subject. Whether the fees which may thus be allowed are reasonable compensation for the time, trouble, and expense necessarily involved in complying with such order, we need not inquire. That is a matter resting with the legislative branch of government, not with the judicial. Mr. Serjeant Hawkins after speaking of the English statute governing witness fees in civil cases says: "But in criminal proceedings the demands of public justice supersede every consideration of private inconvenience; and witnesses are bound, unconditionally, to attend the trial upon which they may be summoned, and be bound over to give their evidence. To persons of opulence and public spirit this obligation cannot be either hard or injurious; but indigent witnesses grew weary of expensive attendance and frequently bore their own charges to their great hinderance and loss; * * *." 2 Hawk. P. C. ch. 46, sec. 168. In *West* v. *State,* before cited, in holding that a witness is bound to obey the process of subpoena in criminal prosecutions without payment or tender of fees, the court of last resort in Wisconsin said: "But in no sense can the requisition upon the citizen of his attendance upon the courts to testify as a witness, be considered as the taking of private property for public use, within the meaning of the constitution. The object of that provision in the fundamental law, was to protect the citizen from the grasping demands of government, not to absolve him from any of those various personal duties which every good citizen owes to his country; such as the performance of militia duty, obedience to the call of the proper authority for his personal service in suppressing a riot, the apprehension of a felon, affording assistance to officers in making arrests when resisted, and the like. There are very many instances in which the citizen is required to perform personal service, or render aid to his government, without other compensation than that of his participation in the general good, and his enjoyment of the general security and advantages which result from common acquiescence in such obligations on the part of all citizens alike, and which is essential to the existence and safety of society."

Suppose it be assumed that by reason of inadequate fees, a corporation suffers injury, by way of time, trouble, or expense, consequent on a compliance with an order to produce evidentiary documents in its possession and control, yet its rights guaranteed by the federal constitution are not thereby violated, since the injury is incidental to the legitimate exercise of the powers of government in the interests of public justice and for the public good. While it may be true, strictly speaking, that criminal law, a law which deals with offences after they have been committed, does not fall within the domain of the police power, a power which aims to prevent offences, (Freund, Police Power, sec. 86) yet, the law governing incidental injuries, to rights of private property, resulting from the exercise of governmental powers, lawfully and reasonably exerted for the public good, is by analogy, much in point. In *Chicago, B. & Q. R. Co.* v. *Drainage Comrs.* 200 U. S. 561, 50 L. Ed. 596, the opinion of the Court being by Mr. Justice Harlan, after a very extended examination of decisions of the Federal Supreme Court, also of the courts of last resort in several of the states, it was held, that "if the injury complained of is only incidental to the legitimate exercise of governmental powers, for the public good, then there is no taking of property for the public use, and a right of compensation, on account of such injury does not attach, under the Constitution." Upon this same question, see also *Village of Carthage* v. *Frederick,* 122 N. Y. 268.

We hold, therefore, that the statute under consideration is not repugnant to the provisions of the fourteenth amendment in this respect.

It being conceded that the decisive question is as to the jurisdiction of the court, we hold that the court had jurisdiction, and we find no error in the proceedings.

*The petition for certiorari and the petition for a writ of error are dismissed with costs, the exceptions are overruled with costs, and judgment that the respondent take nothing by its exceptions, and that execution be done.*