STATE v. JAMES DUNCAN ET AL.

October Term, 1905.

Present: ROWELL, C. J., TYLER, WATSON, HASELTON, and POWERS, JJ.

Opinion filed February 2, 1906.

*Criminal Law—Conspiracy—Sufficiency of Indictment—Respondent's Testimony Before Grand Jury—Self-Criminating Evidence—Nature of Privilege—Waiver—Effect on Indictment.*

When a witness has the personal privilege to testify or not as he chooses, and he testifies without objection, he will be deemed to have done so voluntarily.

The common law immunity guaranteed by that provision of our Constitution which declares that no one can be compelled to give criminating evidence against himself is an option of refusal, and not a prohibition of inquiry; it is a personal privilege which may be waived, and which is waived if not seasonably asserted.

This privilege is the witness's, and he alone must claim it.

Nor is it requisite, in order to constitute a waiver of this privilege, that the witness be notified thereof, and warned of the possible consequence if he gives testimony criminating himself; though such notice and warning are usually given.

Where at the time a person comes before a grand jury as a witness, in obedience to a subpoena duly served upon him, he is neither under arrest for, nor charged with, any crime, he stands as a mere witness, and his testimony, given without objection on his part, is properly received and considered by the grand jury, although it tends to criminate him; and said grand jury may subsequently, on the strength of such testimony, legally indict him of the crime concerning which he so testified.

The law is different where a person is under arrest for, or charged with, the crime about which he is examined, and for which he is afterwards indicted; in such case he stands as a party, and not as a witness.

A plea in abatement of an indictment for conspiracy, which alleges that while said indictment and the charges of conspiracy therein contained were pending before the grand jury, and while the grand

jury were investigating and inquiring into said charges, the respondent was summoned before the grand jury and was required and compelled to give testimony touching said indictment and charges and was fully interrogated as to them, and was then and there obliged and compelled to make, and then and there did make, answer thereto on his oath, is bad on demurrer, in not alleging that respondent asserted his privilege and objected to giving criminating evidence against himself; for until such assertion, there could be no compulsion; the alleged compulsion is a mere conclusion, whereas facts and not conclusions, should have been alleged.

The further allegations of said plea, that respondent did not know what was going on before the grand jury, and was not advised of his privilege in respect of giving criminating evidence against himself, are immaterial; for it is not shown that at the time he so testified it had been ascertained that a crime had been committed, or that he was in custody charged with a crime, or even suspected thereof.

Nor is the allegation that he was "wholly ignorant" of his rights in respect of his privilege, material, for ignorance of the law excuses no one.

An indictment against ten persons for conspiracy "to prevent, hinder, and deter" the several persons therein named, "by violence, threats, and intimidation from engaging and continuing in the business of manufacturing granite," charges a conspiracy to do an act unlawful at common law, and therefore is sufficient.

INDICTMENT against ten persons for conspiracy. Five of the respondents were summoned before the grand jury and gave self-criminating evidence under oath, and they severally pleaded that in abatement. The other five respondents jointly pleaded that in abatement, though they themselves were not called before the grand jury. Heard on demurrer to said pleas in abatement at the June Term, 1905, Caledonia County, *Munson,* J., presiding. Demurrers sustained, *pro forma,* and pleas adjudged insufficient, to which the respondents excepted. Whereupon respondents severally demurred to the indictment.

Demurrers overruled, *pro forma,* and indictment adjudged sufficient, to which the respondents excepted.

The indictment alleges that certain persons therein named were engaged at Hardwick, etc., in the business of manufacturing granite, and thereby gaining a livelihood; that the respondents at, etc., "with divers other evil disposed persons to the grand jurors unknown, did then and there unlawfully combine, conspire, confederate, and agree together to prevent, hinder, and deter by violence and threats and intimidation the said" manufacturers of granite "from further engaging and continuing in the business of manufacturing granite, to the great damage of said" manufacturers, "and to the evil example of all men, and against the peace," etc.

*Senter & Senter, Taylor & Dutton, M. G. Morse,* and *Harland B. Howe* for the respondents.

The proceedings disclosed in the pleas in abatement are in direct violation of the tenth article of our Constitution, "Nor can he be compelled to give evidence against himself." *U. S.* v. *Edgerton,* 80 Fed. 374; *Boyd* v. *U. S.,* 116 U. S. 617; *Boone* v. *People,* 148 Ill. 440; *Entrick* v. *Carrington,* 19 Howell's St. Tr. 1029; *Cullum* v. *Com.,* 24 Grath, 624; *Temple* v. *Com.,* 75 Va. 892.

An indictment founded upon evidence brought forth by means so palpably in violation of the Constitution should be quashed. *State* v. *Frosiseth,* 16 Minn. 297; *Counselman* v. *Hitchcock,* 142 U. S. 547; *Boone* v. *People,* 148 Ill. 448; *People* v. *Singer,* 5 N. Y. Crim. Rep. 1; *People* v. *Haines,* 6 N. Y. Crim. Rep. 100; *U. S.* v. *Edgerton,* 80 Fed. 374; *People* v. *Moore,* 65 Howard's Pr. 186; *State* v. *Horton,* 63 N. C. 595; *Cullen* v. *Com.,* 24 Gratt. 624; *Temple* v. *Com.,* 75 Va. 892; *Boyd* v. *U. S.,* 116 U. S. 616; *State* v. *Clifford,*

86 Iowa 550; *Corley* v. *State,* 50 Ark. 305; *People* v. *Sellick,* 4 N. Y. Crim. Rep. 329; *People* v. *Sharp,* 107 N. Y. 436; *People* v. *Lauder,* 82 Mich. 109; Rapalje on Proc. § 77; Thompson and Merriman on Juries, § 643.

Nor can it be contended that a party testifying under oath before a grand jury is a voluntary witness. *People* v. *McMahon,* 15 N. Y. 395; *People* v. *Mondon,* 103 N. Y. 211, 18 N. E. 496.

The demurrer to the indictment should have been sustained. "When the criminality of a conspiracy consists of an unlawful agreement by two or more to compass or promote some criminal or illegal purpose, that purpose must be fully and clearly stated in the indictment." *Com.* v. *Hunt,* 4 Met. 111, 38 Am. Dec. 346; *State* v. *Crowley,* 41 Wis. 271; *U. S.* v. *Cruikshank,* 92 U. S. 542; *State* v. *Stewart et al.,* 59 Vt. 292; *State* v. *Hewitt,* 31 Me. 398; *State* v. *Roberts,* 34 Me. 320; *Lambert* v. *The People,* 9 Iowa 578; *Com.* v. *Eastman et al.,* 1 Cush. 225; *Com.* v. *Shedd,* 7 Cush. 514; *Alderman* v. *People,* 4 Mich. 414, 69 Am. Dec. 321; *State* v. *Parker,* 43 N. H. 88; *Cole* v. *The People,* 84 Ill. 219; *People* v. *Bartlow,* 37 Mich. 456; *State* v. *Jones,* 13 Iowa 269; *State* v. *Potter,* 28 Iowa 557; *People ex rel. Lawrence* v. *Brady,* 56 N. Y. 182.

*Frank D. Thompson,* State's Attorney, *W. W. Miles,* and *David E. Porter* for the State.

To permit every respondent to question the competency and qualification of every witness before the grand jury would defeat the ends of justice. *State* v. *Dayton,* 23 N. J. L. 49; *U. S.* v. *Reed,* Fed. Cas. No. 16135; *People* v. *Hulbut,* 47 Am. Dec. 244; *Gitchell* v. *People,* 146 Ill. 175, 37 Am. St. Rep. 147; *Com.* v. *Hill,* 11 Cush. 137; *State* v. *Baker,* 20 Mo. 338; *State* v. *Fassett,* 16 Conn. 457; *State* v. *Rickey,* 10 N. J. L. 83.

Pleas in abatement are required to have the highest degree of accuracy and precision, leaving nothing to be supplied by intendment or construction. *Hill* v. *Powers,* 16 Vt. 516; *Bowman* v. *Stowell,* 21 Vt. 309; *Durand* v. *Griswold,* 26 Vt. 48; *Bank of Rutland* v. *Barker,* 27 Vt. 293; *Morse* v. *Nash,* 30 Vt. 76; *State* v. *Emery,* 59 Vt. 84; *State* v. *Ward,* 60 Vt. 142; *State* v. *Rife,* 18 R. I. 596, 30 Atl. 467.

For aught that appears in the plea there was legal evidence before the grand jury, as there is no allegation to the contrary. *People* v. *Lauder,* 82 Mich. 109; *Crane* v. *Warner,* 14 Vt. 40.

The grand jury could not have compelled respondents to testify, only the court could do that. *State* v. *Comer,* 157 Ind. 611, 62 N. E. Rep. 452; *Heard* v. *Pierce,* 8 Cush. 338, 54 Am. Dec. 757.

The privilege of a witness to refuse to give self-criminating evidence is personal. He alone can invoke it. 3 Wig. §§ 2268-2276; *Chamberlin* v. *Wilson,* 12 Vt. 491, 75 Am. St. Rep. 339. (Note).

If a witness, in response to a subpoena appears before the grand jury and voluntarily testifies to self-incriminating matters, the validity of an indictment against him cannot be impeached thereby. Thompson and Merriam on Juries, § 643; *People* v. *Lauder,* 82 Mich. 109; *State* v. *Comer,* 157 Ind. 611, 62 N. E. 452; *U. S.* v. *Kimball,* 117 Fed. 156; *U. S.* v. *Brown,* 1 Sawy. 531, Fed. Cas. 14671; *People* v. *King,* 28 Cal. 265; *State* v. *Donelson,* 45 La. Ann. 744.

ROWELL, C. J.   This is an indictment against ten for conspiracy "to prevent, hinder, and deter" the several persons therein named, "by violence, threats, and intimidation, from further engaging and continuing in the business of manufacturing granite." Five of the prisoners were summoned before

the grand jury, and gave self-criminating evidence under oath, and they severally plead that in abatement. The other five jointly plead that in abatement, although they themselves were not called before the grand jury. The pleas are demurred to; but only McNaughton's several plea need be considered, as the others are essentially like it.

That plea alleges that while said indictment and the charges of conspiracy therein contained were pending before the grand jury, and while the grand jury was investigating and inquiring into said charges, and considering whether it would find said indictment, the prisoner appeared before the grand jury in obedience to a subpoena duly served upon him; that he did not then know that said indictment and charges were being investigated; that he was not permitted to have counsel, and was not advised in the premises; that he was sworn by the foreman of the grand jury to testify upon the subject-matter of said charges, and was required and compelled to make oath as a witness, and then and there under oath, was required and compelled to give testimony touching said indictment and charges, and was fully interrogated as to them, and questioned as to each and every detail, fact, and circumstance of the same, and was then and there obliged and compelled to make, and then and there did make, answer thereto on his oath; that he was not then and there informed by the grand jury, the State's attorney, nor any one else, and did not know that his own conduct and acts in reference to said charges were then and there in question and under consideration by the grand jury, and that he was not informed, and did not know, that he was then and there charged with any crime, and was not then and there warned nor advised of his right and privilege to refuse to give evidence against himself, and was wholly ignorant and uninformed of his rights in

.that respect, and did then and there involuntarily and upon his oath answer all questions asked him concerning said charges, and was compelled to testify, and did testify, to facts that were material and necessary to establish the truth of said charges against him and the other respondents; that his said testimony was considered and acted upon by the grand jury in finding and presenting said indictment; and that he was summoned before the grand jury as aforesaid for the purpose of obtaining evidence from him upon which to find said indictment against him and the other respondents.

It is objected that as the matter complained of does not go to the qualification of the grand jury, but only to the propriety of its proceedings, it cannot be taken advantage of by plea in abatement, but only, if at all, by suggestion to the court. But we pass over that question, and consider the plea on its merits.

Our Constitution declares that no one can be compelled to give criminating evidence against himself. Such is the common law. *Nemo tenetur seipsum accusare.* It is objected that the plea is bad because it does not show that the prisoner *was* compelled to give criminating evidence against himself. This immunity is a personal privilege, and may be waived, and is waived if not seasonably asserted, and the testimony regarded as voluntary. *Chamberlin* v. *Wilson,* 12 Vt. 491. The plea does not show that the prisoner asserted his privilege. It alleges that he involuntarily testified. But that is subjective, signifying only his mental state, and means no more than unwillingly and reluctantly, and does not imply a disclosure of that mental state by objecting to answer nor otherwise; and until such disclosure was made in some way, there could have been no compulsion. True, the plea alleges compulsion; but that is only a conclusion, and is not warranted by the facts alleged.

In *People* v. *Lauder,* 82 Mich. 109, the prisoner, who was indicted for bribery, pleaded in abatement that he appeared before the grand jury in obedience to a subpoena, and being ignorant of the fact that charges of bribery against him were being inquired into, and without counsel, or being advised in the premises, he was required and compelled to, and did, give his testimony, and was fully interrogated as to said charges, and testified to facts material and necessary to prove their truth and to sustain the indictment, and that upon his testimony and that of other witnesses the indictment was found. The Court said that being subpoenaed and appearing before the grand jury was not a violation of the prisoner's constitutional rights, nor being sworn before that body, nor testifying upon any matter that did not criminate him, for the law compelled him to do all that under pains and penalties; but that it did not compel him to criminate himself, and that in all cases where a personal privilege exists for a witness to testify or not, and he testifies without objection, he will be deemed to have done so voluntarily. The Court went on to say that the prisoner did not say in his plea that he claimed his privilege, or refused to answer any question; that he averred that he was required and compelled to, and did, make answer to the questions put to him, but that that was a conclusion from the facts, whereas the rules of pleading in abatement required him to set forth the facts, and not his conclusions.

It is objected that that case is by a divided Court, and stands alone; and *Boone* v. *People,* 148 Ill. 440, is much relied upon as holding a different doctrine. It is true that the Michigan case is by a divided Court, but it does not stand alone, nor is the Illinois case opposed to it, for there, at the time of his examination before the grand jury, the prisoner was in custody in jail, charged with the very crime about which

he was examined and for which he was indicted; and there-
fore he stood as a party and not as a mere witness, and the
Court specially noted that distinction.   But in the Michigan
case the prisoner was not in custody, charged with the offence,
at the time he was examined, and therein lies a marked and
fundamental difference between the cases.

*State v. Comer,* 157 Ind. 611, is practically like the
Michigan case.   There the prisoner was indicted for selling
his vote in violation of the statute.   He pleaded in abatement
that for the purpose of obtaining evidence, and securing an
indictment against him, the grand jury caused him to be sum-
moned before them to answer such questions as might be pro-
pounded to him; that he appeared, and was sworn, and while
under oath, was interrogated by the grand jury, and by them
then and there compelled, forced, and caused involuntarily to
testify to matters and facts concerning said crime; that he
was not then and there informed by any one, and did not know,
that he had the legal right to refuse to testify or give to the
grand jury any evidence concerning his supposed connection
with, or commission of, said crime, whereof the grand jury
suspected him guilty; that if he had had such information and
knowledge, he would not have testified about such facts, nor
given the grand jury any evidence in relation thereto; and that
the indictment was returned upon the testimony so given by
him.   The Court said that being summoned and appearing
before the grand jury and being sworn, was not a violation of
the prisoner's constitutional rights, and while before the grand
jury he could be compelled to testify to any matter that would
not criminate him, but could not be compelled to testify to
any matter that would criminate him, and could claim his priv-
ilege or not, as he chose; but if he gave criminating evidence
voluntarily, his constitutional rights were not thereby violated,
for it is a general rule that when a personal privilege exists

for a witness to testify or not as he chooses, and he testifies without objection, he will be deemed to have done so voluntarily; that the allegation of the plea that the grand jury compelled and forced the prisoner involuntarily to testify to facts criminating himself, was a mere conclusion, whereas facts, and not conclusions, should have been alleged; that the grand jury could not have' compelled him, but only the court, and that the plea did not show compulsion; that as to the allegation that the prisoner was not informed, and did not know, of his right to refuse to testify, the statute did not require the grand jury to give him such information; that everybody is presumed to know the law, and that the grand jury had a right to act upon the presumption that the prisoner knew his rights in the premises; that he was not in custody nor under bonds to answer to a charge of selling his vote, and no such charge was pending against him.

The line is definitely drawn in New York between cases in which the testimony of a witness can be used against him, and those in which it cannot be. Thus, when a witness is called and sworn before a coroner's jury before it has been ascertained that a crime has been committed, or before any one has been arrested, charged with the crime, the testimony of that witness, should he afterwards be charged with the crime, may be used against him on his trial; and the mere fact that at the time of his examination he was aware that a crime was suspected, and that he was suspected of being the criminal, will not prevent his being regarded as a mere witness whose testimony may be given in evidence against him, unless he claimed his privilege. But if, on the other hand, at the time of his examination, it appears that a crime has been committed, and that he is in custody as the supposed criminal, he is not regarded as a mere witness, but as a party accused, called before a tribunal vested with power temporarily to investigate

the question of his guilt, and he is to be treated the same as though brought before a committing magistrate, and if his examination is not taken in conformity with the statute, which requires his testimony to be taken without oath and on advice of privilege, it cannot be used against him. This is a judicial examination; that, an extra-judicial. *People* v. *Mondon,* 103 N. Y. 211, is an example of the latter class, and *Hendrickson* v. *People,* 10 N. Y. 13, of the former class, to which the case at bar belongs. There the prisoner's wife died suddenly in the morning, and in the evening of the same day a coroner's inquest was held, and the prisoner was called and sworn as a witness. At that time it did not appear that a crime had been committed, nor that the prisoner had been charged with any crime, nor even suspected, except as far as the nature of some of the questions asked him might indicate such suspicion. On his subsequent trial on an indictment for the murder of his wife, the statements made by him at the coroner's inquest were held admissible, on the ground that he was not examined as a party charged with a crime, but simply as a witness, and had testified without objection. The Court said that it is only in judicial examinations, namely, in the case provided for by statute, when a prisoner is brought before a magistrate charged with crime, that the preliminaries required by statute are to be observed, and the examination taken without oath and on advice of privilege; that all other examinations are extra-judicial; that one is the examination of a witness, the other, of a party; that in all cases, as well before coroners' inquests as on the trial of issues in court, when the witness is not under arrest, nor before the tribunal, charged with crime, he stands on the same footing as any other witness; that he may refuse to answer, and that his answers are to be deemed to be voluntary unless he is compelled to answer after having refused·

to do so, in which case only will they be deemed to be compulsory and be excluded.

The same thing was held in *Regina* v. *Coote,* 12 Cox C. C. 557, which went up from the Court of Queen's Bench for the Province of Quebec on a case reserved. There certain officers called "fire marshals" were appointed under a statute, with power to inquire into the origin of fires in Montreal and Quebec, · and for that purpose to compel the attendance of witnesses and examine them on oath, and to commit to prison any witness refusing to answer without just cause. On an inquiry held in pursuance of that statute as to the origin of a fire in a warehouse occupied by the prisoner, he was examined on oath as a witness. At the time of such examination there was no charge against the prisoner nor any one else, and he was not cautioned that his evidence might be used against him. Subsequently the prisoner was tried for arson of said warehouse, and his depositions made at said inquest were admitted in evidence against him, and properly so, it was held. After reviewing the cases, their Lordships gave it as their opinion that the depositions on oath of a witness legally taken, are evidence against him should he be subsequently tried on a criminal charge, except so much of them as consist of answers to questions to which he has objected as tending to criminate him, but which he has been improperly compelled to answer; that the exception depends upon the principle, *nemo tenetur seipsum accusare,* but does not apply to answers given without objection, which are to be deemed to be voluntary. To the objection that the prisoner should have been cautioned as prisoners accused before magistrates are required to be by statute, their Lordships said that the statute applied only to accused persons, and not to a mere witness, as the prisoner was.

In *Cloggett's Case,* Dearsley, C. C. 656, the Court said that the test is, not whether the witness could discriminate between matters to which he was bound to testify and those to which he was not, but whether he might have objected; that if he might have and did not, he voluntarily submits to testify.

It is unnecessary to inquire whether the conditions and circumstances of a case may not be such as to speak for the witness, and, of themselves, constitute compulsion, for the plea does not present a state of facts calling for such inquiry.

But the privilege is an option of refusal, not a prohibition of inquiry. Hence, when an ordinary witness is on the stand, and a self-criminating act relevant to the issue is desired to be shown by him, the question may be asked, and then it is for the witness to say whether he will answer it or claim his privilege, for it cannot be known beforehand which he will do. 3 Wig. Ev. § 2268; Rapalje's Law of Witnesses, § 265; *Short v. State,* 4 Harr. (Del.) 568. A witness must obey a subpoena, and be sworn; then he may claim his privilege. *In re Eckstein,* 148 Pa. St. 509, 24 Atl. 63; *United States* v. *Kimball,* 117 Fed. Rep. 156, 163; *Boyce* v. *Wiseman,* 10 Exch. 647.

Some of the cases already referred to relate to the question of notifying the ordinary witness of his privilege, and warning him of possible consequences, and such used to be the English practice. Mr. Erskine once said that he conceived it to be of all things the most idle, to recognize the privilege as a principle of law, and not at the same time warn the witness that his answer might criminate him. But in Lord Eldon's time the practice had come to be otherwise, he said, and he would not suppress an interrogatory in chancery allowed by the master, but let it be put, assuming that the witness would claim his privilege if he wanted to. *Paxton* v. *Douglas,* 16

Ves. 242.  Parke, B., said in *Attorney General* v. *Radloff,* 10 Exch. 87, that he thought the witness ought to make the objection himself, though he understood that in Lord Cardigan's case, Lord Denman interposed to prevent a witness from answering a question having a tendency to elicit self-criminating evidence.  It seems clear, upon the authorities, that the old practice has disappeared in England, as far, at least, as any general rule is concerned.

But in this country, Mr. Wigmore says, both the rule and the trial custom vary in different jurisdictions; that no doubt a capable and an impartial judge will give the warning when need appears; but that there is no reason for letting a wholesome custom degenerate into a technical rule.  3 Wig. Ev. § 2269.  In this State the law does not require the warning, though ordinarily it is given, either by counsel, or by the court on its own motion or at the suggestion of counsel.  But the privilege is the witness's, and he alone must claim it. *Chamberlin* v. *Wilson,* 12 Vt. 491.  In Massachusetts it is within the discretion of the court, and the usual practice, to advise a witness that he is not bound to criminate himself, when it appears necessary to protect his rights.  *Mayo* v. *Mayo,* 119 Mass. 292.  So in *Janvrin* v. *Scammon,* 29 N. H. 280, 290, it is held that as the privilege is personal to the witness, it is for him to say in the first place whether he will answer; but that the court will frequently interpose, and inform him of his privilege when it sees that his answer might tend to criminate him.  This seems to be the general practice in this country; but in some of the states it is otherwise.  Thus, in Virginia it is held that as a general rule the witness should be warned of his privilege before he can be held to have waived it by answering.  *Cullen* v. *Commonwealth,* 24 Gratt. 624.

Thus it appears that the allegations of the plea that the prisoner did not know what was going on before the grand jury, and was not advised of his privilege, are immaterial, for it is not shown that at the time he testified before that body it had been ascertained that a crime had been committed, nor that he was in custody, charged with the crime, nor even suspected of it, and therefore he stood as an ordinary witness, and not at all as a party.

Nor is the allegation that he was "wholly ignorant" of his rights in respect of his privilege, material, for he is to be treated just as if he knew them, for ignorance of the law excuses no one. *Coote's* case, above referred to, is in point here. There the Chief Justice of the court below suggested that *Coote* might have been ignorant of the law enabling him to decline to answer criminating questions, and that if he had been acquainted with it, he might have withheld some of the answers he gave. Their Lordships said that as a matter of fact it would appear that he was acquainted with so much of the law; but whether he was or not, it was obvious that to institute an inquiry in each case as to the extent of the prisoner's knowledge of the law, and to speculate whether, if he had known more, he would or would not have refused to answer certain questions, would be to involve a plain rule in endless confusion; and their Lordships saw no reason to introduce, with reference to this subject, an exception to the rule, recognized as essential to the administration of the criminal law, *ignorantia legis non excusat.*

The plea, therefore, is held bad, and the other pleas must fall with it.

The indictment is demurred to for that it does not charge the offence with the requisite certainty. It is claimed that although it is in this respect almost identical in language with

the indictments in *State* v. *Stewart,* 59 Vt. 273, and *State* v. *Dyer,* 67 Vt. 690, which were held good, yet that those cases are not authority for holding this indictment good, because there the conspiracy related to the preventing, hindering, and deterring of workmen from accepting, undertaking, and prosecuting the work of stone cutting, which was made criminal by statute. But the statute is directed more to the means of accomplishing the object of the conspiracy than to the conspiracy itself, and it was held in both of those cases that the indictment charged a conspiracy to do an act unlawful at common law, by means unlawful by statute. Tested by those cases, to which we refer for the law of the subject, it is clear that this indictment charges a conspiracy to do an act unlawful at common law, and therefore is good, without more.

*Judgment affirmed, and cause remanded.*