## State of Vermont v. Edward A. McElreavy

[595 A.2d 1332]

No. 88-260

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed June 7, 1991

*Dale O. Gray*, Caledonia County State's Attorney, Newport, and *Gary Kessler* and *Rosemary Hull*, Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Robert Katims* of *Martin & Paolini, P.C.*, Barre, for Defendant-Appellant.

**Gibson, J.** Defendant appeals from a conviction after jury trial for arson, arguing a violation of Vermont constitutional guarantees against self-incrimination, improper failure of the trial court to suppress statements made in the absence of a *Miranda* warning, and certain errors during sentencing. We affirm.

## I.

Defendant operated a restaurant as a lessee in a St. Johnsbury building in which a fire occurred on the night of September 24, 1986. When the firemen arrived, the door of the building was locked. Detective Richard Hall, a state fire investigator, arrived at the scene during the fire and noticed a petroleum odor, although the building was heated by propane. He testified that the evidence indicated a multiple-origin fire, which was consistent with arson. In the bar area of the restaurant, there was a melted plastic jug, and another jug in the kitchen inside a pail. Tests indicated that the liquid in the jugs was gasoline. Defendant, who was in the building when the fire began, had been seen emptying out jugs in the parking lot of a department store earlier that same evening. Plastic rings from gallon jugs found at the parking lot matched the jugs found at the scene of the fire. Inside a closet that was determined to be a separate point of origin, firemen found some burned debris on top of a plastic pail; the debris emitted a strong odor of petroleum.

Defendant testified that he had left the building after closing the restaurant prior to the fire, but returned to retrieve a forgotten money bag. He stated that a "ball of fire" emerged when he threw a breaker switch to turn on the lights. A witness who was driving by the restaurant at the time testified that he saw the entire dining area light up in flames, an account that was consistent with a gasoline fire, according to the testimony of the St. Johnsbury fire chief. Detective Hall questioned defendant at the scene of the fire. The trial court denied a motion to suppress testimony about that interview and also refused to suppress physical evidence seized at the scene immediately after the fire was extinguished.

Subsequent to the fire, defendant filed a claim with his fire insurance carrier seeking recovery of more than $11,000. Defendant's policy included a provision requiring him to submit to

examination under oath in connection with any claim he might make. When the insurance carrier sought to depose defendant about his claim, it notified him that he would forfeit his claim if he failed to appear for the deposition. Shortly after notice of the deposition was given to defendant, the State filed its information against him. Defendant did not appear at the deposition or ever communicate, either directly or through a representative, with the insurance company or its attorney.

Prior to trial, the court denied defendant's motion in limine to exclude testimony that he had failed to appear for the civil deposition. After an eight-day trial, the jury returned a guilty verdict, and the present appeal followed.

## II.

### A.

Defendant argues that the State's comment on his failure to appear for the civil deposition violated his Vermont constitutional rights. He contends that Chapter I, Article 10 of the Vermont Constitution offers broader protection against self-incrimination than the United States Constitution, and urges this Court to follow Pennsylvania's lead and not "'differentiate between situations where the right to remain silent is exercised following warnings and where it is exercised without warnings being given.'" *Commonwealth v. Turner*, 499 Pa. 579, 584, 454 A.2d 537, 540 (1982) (quoting *Commonwealth v. Easley*, 483 Pa. 337, 341–42 n.5, 396 A.2d 1198, 1200–01 n.5 (1979)).

We have previously held that Article 10 requires a timely assertion of the privilege against self-incrimination. *In re Consolidated Rendering Co.*, 80 Vt. 55, 75–76, 66 A. 790, 798 (1907), *aff'd*, 207 U.S. 541 (1908); *State v. Duncan*, 78 Vt. 364, 370, 63 A. 225, 228 (1906). Our rule reflects the well-established federal rule that the privilege is not self-executing but, instead, must be timely asserted. See, e.g., *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984) (if a witness desires the protection of the privilege, he must claim it); *Roberts v. United States*, 445 U.S. 552, 559 (1980) ("privilege may not be relied upon unless it is invoked in a timely fashion"). Defendant could have exercised his privilege at the civil deposition, even though it was not a criminal proceeding. See *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977).

■■ Defendant, however, failed to appear for the deposition and, at the time, provided no explanation whatsoever. His silence does not constitute an assertion of the privilege. See *United States v. Nabors*, 707 F.2d 1294, 1299 (11th Cir. 1983) (failure to respond to insurance company's request for information commented upon at defendant's criminal trial; court held that because privilege was not claimed at "the time of the silence, [defendant] could not claim it at trial"); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (privilege lost when defendant failed to object or respond in a timely manner to interrogatories). Defendant asserted the privilege for the first time in a pretrial motion in limine. By failing to assert the privilege in a timely manner in response to specific questions, defendant has prevented court review of his claim in the context of those questions. See *In re Dewar*, 102 Vt. 340, 345, 148 A. 489, 490 (1930) (legitimacy of witness's assertion of the privilege under Chapter I, Article 10 is determined by the court, not the witness); *State v. Wood*, 99 Vt. 490, 492–93, 134 A. 697, 698 (1926) (same); see also *Roberts*, 445 U.S. at 560 n.7 (same rule under federal constitution); *Davis*, 650 F.2d at 1160 ("blanket claim of privilege is simply not sufficient"). Accordingly, defendant may not now be heard to assert that the prosecutor's comment upon his failure to appear at the deposition violated his privilege.

B.

Defendant also contends that this evidence should not have been admitted because it was irrelevant, relying on *State v. Benneig*, 146 Vt. 391, 397–98, 505 A.2d 1192, 1196–97 (1985) (citing *People v. Diaz*, 98 Mich. App. 675, 684, 296 N.W.2d 337, 341 (1980)). In *Benneig*, we affirmed the trial court's ruling that barred comment by counsel on a *witness's* assertion at trial of his privilege. In contrast, the instant case involves use of *defendant's* silence. We note that *Benneig* relies on Michigan case law, which distinguishes between use of a defendant's silence and a witness's assertion of the privilege. Compare *People v. Cetlinski*, 435 Mich. 742, 760, 460 N.W.2d 534, 542–43 (1990) (prearrest pre-*Miranda* "nonverbal conduct by a defendant, a failure to come forward, is relevant and probative for impeachment purposes when the court determines that it would have been 'natural' for the person to have come forward with the

exculpatory information under the circumstances"), with *People v. Dyer*, 425 Mich. 572, 581, 390 N.W.2d 645, 650 (1986) ("'As a matter of public policy, we believe the exercise of a witness's constitutional right to remain silent should not be used as evidence to support an inference for either side.'") (quoting *Diaz*, 98 Mich. App. at 684, 296 N.W.2d at 341).*   Thus, the rule expressed in *Benneig* is not strictly applicable herein.

██    Further, the posture of the instant case is significantly different from that in *Benneig*. In *Benneig*, we affirmed the trial court's ruling to exclude comment during final argument. In contrast, defendant seeks reversal of an evidentiary ruling. The trial judge has broad discretion in determining whether evidence is relevant. *State v. Derouchie*, 153 Vt. 29, 34, 568 A.2d 416, 418 (1989). Additionally, whether the "'probative value is substantially outweighed by the danger of unfair prejudice'" is also left to the trial court's discretion. *Id.* (quoting V.R.E. 403). In making Rule 403 determinations, the trial judge has substantial discretion and, absent an abuse of discretion, will not be overruled. *State v. Callahan*, 155 Vt. 571, 577, 587 A.2d 970, 973 (1991). "'To support a claim of abuse of discretion, defendant must show that the court's discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable.'" *State v. Parker*, 149 Vt. 393, 401, 545 A.2d 512, 517 (1988) (quoting *State v. Dorn*, 145 Vt. 606, 616, 496 A.2d 451, 457 (1985)). "This burden is a heavy one and often difficult to satisfy; nevertheless, it has always been the standard." *Id.*

In the instant case, the state's attorney argued before the trial court that "for someone to throw away a claim worth $11,000 needs some explanation, and I can't think of any explanation other than he didn't want to talk about this fire because he did it." Defendant argued that the evidence was not relevant and that, in any event, pursuant to V.R.E. 403, it should be excluded. The trial court ruled that the proffered testimony was "not insolubly ambiguous," that a "jury could reasonably draw some inferences" from it, and that under "the unique factual situation here" the evidence was admissible.

---

* Defendant has made no argument that he ever received *Miranda* warnings or comparable affirmative assurances from the State regarding his right to remain silent prior to his failure to appear at the scheduled deposition.

■ Defendant's failure to attend the deposition may well have some probative value under a consciousness-of-guilt theory. See *Gainer v. State*, 553 So. 2d 673, 683 (Ala. Crim. App. 1989) (defendant's failure to attend a civil deposition held admissible in a criminal trial to show consciousness of guilt); see also *People v. Heidorn*, 114 Ill. App. 3d 933, 938, 449 N.E.2d 568, 574 (1983) ("A defendant's silence prior to arrest is admissible, as is the failure to give statements to private parties, such as security guards, as opposed to the police."). Considering all of the circumstances, we believe the trial court did not abuse its discretion by admitting the evidence.

## III.

Defendant next argues that the trial court should have refused to allow testimony about statements he made to the detective on the night of the fire. No *Miranda* warnings were given at that time. Relying on *State v. Brunell*, 150 Vt. 388, 554 A.2d 242 (1988), defendant contends that he did not feel free to leave the scene during questioning, and hence, felt under arrest.

The instant case is not, however, analogous to *Brunell*. In *Brunell*, the defendant and his wife were taken late at night by police cruiser to the state police barracks, about a half-hour drive away, where the defendant was subjected to a lengthy interrogation by two officers in a small office, out of the presence of his wife. Defendant's brother was not allowed to go with them, and when defendant's mother inquired whether they "had" to go that night, the police answered that they did. The trial court concluded that "a reasonable person in defendant's shoes under the existing circumstances would not have felt free to leave or to refuse to submit to questioning." *Id.* at 391, 554 A.2d at 244. After noting that the court's ruling would not be reversed unless it was clearly erroneous, *id.* at 390, 554 A.2d at 243, we held that "[t]he trial court's conclusion was not erroneous as a matter of law." *Id.* at 392, 554 A.2d at 244.

In contrast, in the instant case the trial court found that the interview between defendant and Officer Hall "took place in the officer's car, to which the defendant went on invitation of the officer" within minutes of the officer's arrival on the scene. After the interview, "which took several minutes," the officer and

defendant returned to the parking lot of the restaurant, where they each remained for several hours. The court concluded:

> The defendant accompanied the officer voluntarily to his car, which was a more reasonable place to conduct a conversation than the fire scene. Neither the circumstances of the conversation nor the location were custodial, and Mirandas were not required.

Defendant faults the trial court for not specifically finding that he felt "free to leave or to refuse to answer police questioning." *State v. Willis*, 145 Vt. 459, 475, 494 A.2d 108, 117 (1985). Defendant misreads *Willis*. We stressed in that case that the trial court should make an objective inquiry into the totality of the circumstances of any interrogation to determine if a reasonable person would believe he or she were free to leave or to refuse to answer police questions, and that the court should keep a watchful eye on "situations approximating 'incommunicado interrogation of individuals in a police-dominated atmosphere,' *Miranda* [*v. Arizona*], 384 U.S. [436,] 445 [(1966)], or the 'functional equivalent of formal arrest.'" *Id.* (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). The trial court made very clear in the instant case that defendant was never in a custodial setting and that he in fact left the police cruiser after very brief questioning. The court did not have to recite any particular words to validate its conclusion that the questioning of defendant took place in a noncustodial setting, and it was not compelled to find *in haec verba* that a reasonable person in defendant's situation would have felt free to leave the car if and when he chose to do so.

## IV.

Finally, defendant contends that the trial court erred in its sentencing when it allowed evidence of the fire insurer's damages, because the insurance company was not a "victim" within the meaning of 13 V.S.A. § 5301. A letter from the insurer was presented to the court indicating that in addition to payment of the loss to the insured, it had spent approximately $25,000 in attorney's fees, employees' wages and salaries, investigative expenses, and overhead. We need not reach the question of whether the insurer was a "victim" for purposes of

§ 5301, since the only questions presented are whether the evidence of the insurer's loss was relevant, and if so, whether the trial court weighed the evidence properly in considering its sentence. We stated in *State v. Bushway*, 146 Vt. 405, 407, 505 A.2d 660, 661 (1985): "In fashioning a sentence, the court is called upon to consider a wide range of 'relevant' information. The propensity and nature of the offender, the particular acts by which the crime was committed, and the circumstances of the offense are all relevant to the determination of an appropriate sentence."

Defendant does not argue that the damage caused by the arson is irrelevant. But he asserts that an insurer's costs of investigating and paying a claim cannot be considered by a sentencing court because "[i]nsurance companies investigate and pay claims as part of their job" and such costs are "part of the costs of running their business." True as that may be, defendant does not explain why the harm to the insurer attributable to him should fall outside the scope of the consequences of his arson. See *State v. Hagen*, 361 N.W.2d 407, 414 (Minn. Ct. App. 1985) ("An arson significantly more serious than a typical arson also justifies a durational departure. . . . The insurance company lost more than $70,000, and the new buyers lost a house which had historical value.").

In the present case, the insurer itemized and distinguished amounts paid directly to the insured, expenses directly attributable to the crime, such as legal and investigatory expenses, and allocations of existing overhead expenses, such as wages and salaries paid to employees. There is no indication from the record that the court misunderstood the information supplied by the insurer or that it gave undue weight to that information in evaluating the impact of defendant's crime. Defendant bears the burden of establishing prejudice in the sentencing procedures, *State v. Cyr*, 141 Vt. 355, 357, 449 A.2d 926, 927 (1982), and he has not done so herein.

*Affirmed.*

**Peck, J.,** concurring. I agree with the result reached in this matter and, generally, with the supporting rationale as well. Nevertheless, since I believe strongly, to put it as tactfully as I

can, that *State v. Brunell*, 150 Vt. 388, 554 A.2d 242 (1988), is one of the most unfortunate decisions in the recent history of this Court, I cannot remain silent when it is cited as precedent for one of the important concerns in this case. To do so might give the impression that I have revised the views expressed in my dissent in *Brunell*. In fact, I think the Court's conclusions drawn from the facts in that case should not be condoned and perpetuated by being cited to support a point of law in subsequent cases.

We cannot, of course, "overrule" *Brunell* because that insult to justice and public safety is almost entirely fact-based. However, the facts in *Brunell*, as set forth in the opinion here, are grossly one-sided and give a completely misleading picture of the factual totality. A fair and complete recitation of those facts exposes the full extent to which the majority was prepared to go to justify a predetermined result.

There are many precedents which might have been cited in support of a well-settled point of law without relying on *Brunell* and thereby putting the Court's stamp of approval on a bad decision. I will not sanction anything which might even possibly be construed to indicate that I am now content with *Brunell*. Since my concern is fact-based, however, and I have no quarrel with the point of law involved, I concur with the result, feeling nevertheless, that *Brunell* should be allowed to fade into history as an unfortunate aberration or an incident of bad judgment which reflects no credit on the Court.

**Morse, J.,** concurring and dissenting. The Court holds that defendant did not timely assert his privilege against self-incrimination because he "failed to appear for the deposition and, at the time, provided no explanation whatsoever. His silence does not constitute an assertion of the privilege." The Court goes on to hold that the trial court did not abuse its discretion under V.R.E. 401–403, distinguishing *State v. Benneig*, 146 Vt. 391, 505 A.2d 1192 (1985). For the reasons that follow, I do not agree that the Court's analysis adequately addresses defendant's claims in Part II of its opinion and, therefore, I concur in Part II(A) and dissent in Part II(B).

Before trial, defendant filed a motion in limine requesting the court to prohibit the State from calling Duncan Kilmartin, a

lawyer representing Co-operative Fire Insurance Association of Vermont, the fire-loss carrier. According to the motion, the purpose of Mr. Kilmartin's testimony was to inform the jury that defendant, several weeks after he had been charged with arson, did not appear at a noticed deposition to answer questions about the fire. Defendant's first claim was that such evidence was irrelevant and, if relevant, unduly prejudicial. V.R.E. 401–403. He also raised the Vermont Constitution, Chapter I, Article 10, as a bar to such evidence. The State sought to introduce the evidence because, as the prosecutor argued at the motion hearing, defendant "didn't want to talk about this fire because he did it." The trial court ruled that the evidence had some relevance and that Article 10 did not come directly into play. It did not indicate that a V.R.E. 403 balancing was undertaken.

Mr. Kilmartin was allowed to testify. He stated that he sent a letter to defendant on January 6, 1987, requesting him to appear at an examination under oath in accordance with his fire insurance policy, which required the insured to cooperate with the insurer. The letter instructed defendant to appear at Kilmartin's office on January 28, 1987, and warned him that noncooperation might "cause forfeiture of all his rights under the policy." Defendant did not appear on January 28 and did not communicate with Kilmartin as to why not. The following day, January 29, defendant was sent a letter informing him that his policy had been voided due to his noncooperation. Kilmartin did not thereafter communicate with defendant nor defendant with him.

## I.

Chapter I, Article 10 provides, in relevant part:

> [I]n all prosecutions for criminal offenses, a person . . . [cannot] be compelled to give evidence against himself . . . .

This prohibition does not render inadmissible a "statement that is freely and voluntarily given, without any compelling influence." *State v. Miner*, 128 Vt. 55, 70, 258 A.2d 815, 824 (1969). When a statement is procured by a representative of the State, its admissibility against the defendant under Article 10 depends on compliance with *Miranda. State v. Brunelle*, 148 Vt.

347, 355 n.11, 534 A.2d 198, 204 n.11 (1987) ("evidence obtained in violation of *Miranda* is also in violation of the privilege against self-incrimination in Article 10 of the Vermont Constitution.").

These Article 10 considerations simply did not arise in this case. First, Duncan Kilmartin was not an agent of the State, and defendant was not in custody as a result of anything Kilmartin did. He merely represented a private insurance company, and his purpose was to carry out the investigative function under defendant's insurance contract. The fact that Mr. Kilmartin would undoubtedly turn over any results of his investigation to the prosecution does not trigger Article 10. See *State v. Killary*, 133 Vt. 604, 606, 349 A.2d 216, 217 (1975) (any statement given spontaneously and voluntarily without any compelling influences is admissible into evidence, even if given to an undercover agent, as long as the agent was not "planted" for the sole purpose of investigating the accused). Second, representing a private interest, Mr. Kilmartin was not required to issue *Miranda* warnings to defendant prior to asking him questions about the fire.

## II.

The crux of defendant's claim is the law of relevancy. V.R.E. 402 states, "Evidence which is not relevant is not admissible." V.R.E. 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The test of relevancy involves the application of logic, common sense, and experience, and for purposes of this inquiry raises the question, "Is the evidence probative of the proposition for which it is offered?" Reporter's Notes, V.R.E. 401, at 334.

Here, the evidence that defendant did not show up at the insurance deposition was claimed to be probative of the proposition that defendant "didn't want to talk about this fire because he did it." The weakness of the probative value of this evidence for a proper evidentiary purpose, however, is readily apparent.

The logic employed by the prosecution is quite simple. A person's silence under circumstances when an innocent person

would ordinarily speak is evidence of guilt. The silence is viewed as a statement tending to inculpate. An example illustrates this proposition. X, who has just shot Y, is asked, "Why did you shoot Y?" X says nothing. At trial, the defense is self-defense. X's silence is evidence tending to prove that the shooting was not in self-defense because had it been X would have said so when asked why.

We know, however, that not only guilty people are silent in the face of an accusation. Just about everyone has heard of *"Miranda* rights" and knows at least that "you have a right to remain silent." The standard lawyer's advice to defendant clients—innocent as well as guilty—is to refrain from discussing the case with anyone until and if there is reason to do so. The strength of the inference that defendant would have answered Kilmartin's questions if he had been innocent is sapped by the competing explanation that, having been charged with arson several weeks before the scheduled deposition, defendant would not be so naive as to submit to an insurance deposition.

*State v. Benneig,* 146 Vt. 391, 397–98, 505 A.2d 1192, 1196–97 (1985), is instructive. There, a witness's invocation of the privilege against self-incrimination and refusal to answer questions about his involvement were, we held, "simply not relevant, probative evidence." The defense in *Benneig* argued, as the State argues here, that guilt may be inferred from silence. The court prohibited the defense from arguing to the jury that the witness had a guilty mind and even instructed the jury that no inferences may be drawn from the witness's silence.

We were clear in *Benneig* that a refusal to answer questions about a matter that might tend to incriminate the witness was "simply not evidence" and quoted with approval a Michigan case, *People v. Diaz,* 98 Mich. App. 675, 684, 296 N.W.2d 337, 341 (1980):

> As a matter of public policy, we believe the exercise of a witness's constitutional right to remain silent should not be used as evidence to support an inference for either side. Such an inference is wholly speculative since it rests on litigants' perception of juries' foibles. A jury may infer the refusal to testify is a confession implicating defendant or may somehow believe defendant was not involved since his accomplice would not testify. Neither inference is desirable

because the former is obviously prejudicial to defendants while the latter inference cannot be combated by the truth testing device of cross-examination due to the constitutional rights of the witness. Nor can the evidence be termed "relevant evidence". Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. . . . The wholly speculative inference advanced by defendant does not make the existence of any fact of consequence more probable or less probable.

It is certainly no point of distinction to hold, as the Court holds today, that defendant here did not claim his privilege as the witness in *Benneig* did. The probative value of defendant's silence would have been no different if he had responded to Mr. Kilmartin's invitation to come to his office but refused to answer questions while there. Defendant was under no legal compulsion to attend the deposition. He had every right to decline the invitation; no R.S.V.P. was needed. His decision not to attend may have been motivated by the entirely legitimate purpose of refraining from discussing with Mr. Kilmartin the crime with which he was charged. Thus, it would not "have been 'natural' for the person to have come forward with the exculpatory information under the circumstances." *People v. Cetlinski*, 435 Mich. 742, 760, 460 N.W.2d 534, 542-43 (1990).

The point to be gleaned from *Benneig* is that it is impermissible to encourage the jury to infer guilt from silence in the face of accusatory interrogatories. If the accused—guilty or innocent—did not have the right to remain silent in such circumstances, then silence would be relevant evidence. The privilege against self-incrimination strips silence of its otherwise probative worth, and we can no longer say that the circumstances are such that an innocent person would speak. We cannot know in the face of the right of silence whether silence is indicative of guilt because both the guilty and innocent have the right to remain silent. To infer that silence means guilt assumes too much. Silence, when one is legally entitled to be silent, is equivocal behavior at best. *Benneig's* rationale cannot be distinguished as the Court would wish.

This is not a case where defendant's silence was used to impeach his credibility. See *Jenkins v. Anderson*, 447 U.S. 231, 238-39 (1980) (fifth amendment self-incrimination privilege not violated when prosecution impeaches defendant with pre-arrest silence, but a state may prohibit such evidence as more unduly prejudicial than probative); *Fletcher v. Weir*, 455 U.S. 603, 607 (1982) (same effect when post-arrest silence is used to impeach defendant's credibility). No United States Supreme Court case has yet to allow evidence of one's silence to be used in the prosecution's case-in-chief.

I am mindful that trial courts have broad discretion in making relevancy determinations under V.R.E. 401. E.g., *State v. Hooper*, 151 Vt. 42, 46, 557 A.2d 880, 882 (1988); cases cited in Reporter's Notes, V.R.E. 401, at 334-35. Even if *Benneig* is wrong in its analysis of the relevancy of silence, the discretion to admit marginally relevant evidence is narrowed by V.R.E. 403. That rule states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Thus, we have held that evidence of prior convictions, admissible to impeach credibility under V.R.E. 609, must be balanced against the chilling effect on defendant's right to testify. *State v. Jarrett*, 143 Vt. 191, 194, 465 A.2d 238, 240 (1983); see also *State v. Percy*, 146 Vt. 475, 483-84, 507 A.2d 955, 960 (1986) (expert opinion that rapists typically claim consent or amnesia not admissible, even if relevant, because its probative value was substantially outweighed by danger of unfair prejudice).

That the Kilmartin testimony engendered unfair prejudice to defendant was obvious. The testimony was an implicit comment, during the State's case-in-chief, on defendant's failure to come forward before trial and deny his guilt. Defendant's privilege against self-incrimination was adversely affected because he would naturally feel compelled to testify in order to rebut any inference that he was hiding the truth. Had he not taken the stand, defendant would have been doubly disadvantaged. First, he would have left the jury with no legitimate reason for his not attending the deposition, and second, the jury would be

left with the impression—reinforced by his pretrial silence—that defendant at trial had something to hide. See *Griffin v. California*, 380 U.S. 609, 614 (1965) (pressure to testify in the face of adverse comment if defendant remains silent undermines the privilege "by making its assertion costly"). Moreover, the Kilmartin testimony was introduced both to attack defendant's credibility and to show his consciousness of guilt—areas we have previously identified as most critical in demonstrating unfair prejudice. *State v. Valley*, 153 Vt. 380, 387, 571 A.2d 579, 583 (1989).

The Court does not address these considerations at all, let alone indicate what rationale would support the trial court's ruling in face of them. The Court merely incants the abuse-of-discretion boilerplate and leaves the application of the incantation to the facts of this case a mystery for the reader to figure out.

The Court's reliance on *United States v. Nabors*, 707 F.2d 1294 (11th Cir. 1983), to justify the admission of defendant's silence is misplaced. Nabors leased an airplane, which was flown, landed, and burned by a man named Warner. The plane contained marijuana. Warner testified against Nabors saying defendant hired him to smuggle the marijuana into the United States. In its case-in-chief, the prosecution presented evidence that Nabors did not respond to an insurance company's request, which was sent one and one-half years before Nabors was indicted, concerning Nabor's involvement in the use of, and damage to, the airplane. The court ruled the evidence did not violate defendant's privilege under the fifth amendment. The court noted that "Nabors objected and appealed purely on fifth amendment grounds" and stated, "We decide the constitutional issue on the assumption that the evidence was relevant." *Id.* at 1298. The court acknowledged that "[t]he constitutionality of admitting the evidence is difficult to decide." *Id.* Thus, the issue I discuss here was not before the court in *Nabors*, and its analysis assumes that Nabors' silence somehow was relevant evidence. The *Nabors* court said:

> We need not concern ourselves as to whether there were innocent explanations for this action that rob it of evidentiary value. None were argued.

*Id.* at 1299. Finally, *Nabors* did not address a balancing under F.R.E. 403, apparently because it was not raised.

There is no doubt in my mind that defendant was greatly and unfairly prejudiced by the Kilmartin testimony and admitting it in the face of V.R.E. 403 was an abuse of discretion. I would reverse and remand for a new trial.