## STATE of Vermont v. William Earl JEFFREYS, Jr.

[682 A.2d 951]

No. 95-024

June 27, 1996. This interlocutory appeal arises from the Chittenden District Court's ruling on defendant William Earl Jeffreys's motion to suppress four statements made to the Burlington police during an investigation of an assault and robbery. The court suppressed two of four statements on the ground that they were obtained in violation of *Miranda* and the public defender statute. The State contends that all of defendant's statements are admissible. Defendant cross-appeals, contending that none of his statements are admissible. We affirm.

On October 15, 1994, Detective Charland of the Burlington Police Department obtained a search warrant for the apartment where defendant was living and proceeded to that address accompanied by Officers Lewis and Bettino. Defendant arrived shortly after the police. Officer Lewis approached defendant and revealed that he had information linking him to an assault and robbery that had occurred in City Hall Park on Octo-

ber 4, in which a man was robbed and beaten with a cinder block. The officer asked defendant to tell the truth about what had happened. Defendant replied that he was high on marijuana and did not want to talk. Lewis did not notice any odor of marijuana or symptoms of intoxication and continued to question defendant. Defendant did not respond other than to ask, "What do you get for attempted murder — twenty years?" Despite continued questioning, defendant said nothing further and left the porch.

Detective Charland then approached defendant, said that he knew defendant had been involved in the assault, and asked him to cooperate. Defendant stuck his hands out, said the police had nothing on him, and invited them to arrest him if that was their intent. He was handcuffed and put in the back of a cruiser where, with Officer Bettino present, Officer Lewis again tried to elicit a statement. Then Officer Lewis read defendant his *Miranda* rights, and defendant agreed, orally, to waive them. Defendant was not asked to sign a written waiver. Nevertheless, Officer Lewis continued questioning defendant. Ultimately, defendant told Officer Lewis that he had struck the victim in the head with a cement block, knocking him to the ground. He also repeated that he was high and could not remember well.

About forty-five minutes later, while defendant was still in the cruiser, Officer Lewis obtained, and defendant signed, a written waiver form. Officer Lewis then asked defendant to make a taped statement. Defendant said he was high and did not want to make a taped statement. Nevertheless, Officer Lewis obtained a recorder and continued questioning defendant. Defendant acknowledged on tape that his rights had been read to him. He then admitted having gone to the park with an individual named Ritchie. In the park, defendant and Ritchie had encountered the victim, and defendant had hit him with a cinder block, knocking him to

the ground. Defendant further stated that Ritchie had kicked the victim and said, "Let's do him," or words to that effect, to which defendant had replied, "Let me do him."

Several hours later, at the police station, defendant approached Detective Charland and said that he remembered more about the incident and wanted to expand upon his prior answers. Defendant proceeded to give an additional statement.

First, defendant claims that the trial court erred by failing to suppress the question defendant asked in the course of his conversation with Officer Lewis on the back porch: "What do you get for attempted murder — twenty years?" Relying on *Miranda v. Arizona*, 384 U.S. 436 (1966), he contends that the statement was obtained in violation of his right to remain silent because the officer continued to question him after he told the officer that he did not want to talk. We have held, "[T]he right against self-incrimination . . . does not attach absent custodial interrogation or a situation approximating incommunicado interrogation in a police-dominated atmosphere." *State v. Houle*, 162 Vt. 41, 44-45, 642 A.2d 1178, 1181 (1994). To determine whether defendant was in custody, the court must make an objective inquiry into the totality of the circumstances to determine if a reasonable person would have felt free to leave or to refuse to answer police questions. *State v. McElreavy*, 157 Vt. 18, 25, 595 A.2d 1332, 1336 (1991).

In this case, defendant was questioned at his home and evidently felt free to refuse to respond to questions because he walked away from Officer Lewis without answering. The trial court, therefore, found that defendant was not in custody when he spoke on the porch, and we conclude that the court's determination was not clearly erroneous. See *State v. Brunell*, 150 Vt. 388, 390, 554 A.2d 242, 243 (1988) (court's ruling on whether de-

fendant was in custody reviewed under "clearly erroneous" standard).

Defendant also relies on *Coppola v. Powell*, 878 F.2d 1562, 1568 (1st Cir. 1989), where the court ruled that the petitioner's prearrest statement that he was not going to confess to police was an invocation of the right to remain silent and that this right was violated when the trial court admitted the statement in the State's case-in-chief. Here, however, defendant's prearrest statement that he did not want to talk is not at issue. Rather, he maintains that his prearrest invocation of the right to remain silent is valid under *Coppola* and must be "scrupulously honored" under *Miranda*, 384 U.S. at 479. We reject this argument because *Coppola* applies only to a noncustodial statement invoking the right to remain silent, and *Miranda* does not apply in a noncustodial situation. Neither rule is applicable here. Indeed, there is no right to cut off questioning where the suspect is not in custody. See *United States v. Serlin*, 707 F.2d 953, 957-58 (7th Cir. 1983).

Next, the State argues that the court erred by suppressing defendant's statements made in the cruiser. The trial court suppressed these statements on the ground that they were obtained in violation of defendant's *Miranda* rights and the public defender statute, 13 V.S.A. §§ 5234 (notice of rights) & 5237 (waiver must be in writing or otherwise recorded). We agree that the statements were obtained in violation of the public defender statute and therefore do not reach the *Miranda* issues.

Under the public defender statute, the officers are required to notify the appropriate public defender "upon commencement of detention" unless the detainee has an attorney or waives the right to have an attorney. 13 V.S.A. § 5234(a)(2). To be effective, the waiver must be in writing. 13 V.S.A. § 5237. The State argues that the written waiver executed after defendant's initial statement effec-

tively waived defendant's rights for the unrecorded statements previously made and for the recorded statements subsequently made. We conclude that the written waiver is legally insufficient and therefore affirm the court's suppression of all statements defendant made in the cruiser.

The waiver form here lists the *Miranda* warnings followed by three questions: "(1) Do you understand each of these rights? (2) Do you wish to exercise any of these rights? (3) Having these rights in mind, do you wish to talk to me now?" Defendant's signature and the signatures of two witnesses appear below. Nowhere on the form does it indicate that defendant answered any of the questions or waived any of these rights. Moreover, the questions do not address the right to counsel as required by the public defender statute. "[T]he requirement of a written waiver is clear. If a waiver was required and not given in the manner prescribed by statute, the evidence obtained in the subsequent questioning of defendant must be suppressed." *State v. Pellerin*, 161 Vt. 229, 232, 637 A.2d 1078, 1080 (1993). Because the waiver form was ineffective, we need not determine whether a written waiver can be effective as to previously made statements.

Defendant argues that the court erred in admitting the statement he made several hours later at the police station. The trial court concluded that the statement was admissible because it was spontaneously volunteered, not the product of interrogation. Defendant maintains that the earlier confessions, obtained in violation of *Miranda* and the public defender statute, tainted his subsequent statement at the station, which therefore should be suppressed as involuntary. Even considering the public defender statute violation, and assuming a *Miranda* violation, we conclude that the spontaneous statement made several hours later at the station was voluntary and therefore ad-

missible. Cf. *Medeiros v. Shimoda,* 889 F.2d 819, 824-25 (9th Cir. 1989) (although first statement suppressed for failure to give *Miranda* warnings prior to custodial interrogation, second statement made by defendant not suppressed because it was spontaneous, there had been a half-hour lapse of time, and statement was given to different officers). We reject defendant's claim that not knowing that his prior confessions were not admissible compromised the voluntariness of the statement at the station. See *Oregon v. Elstad,* 470 U.S. 298, 316-17 (1985) (rejecting argument that defendant could not give fully informed waiver because he did not know that prior statements could not be used against him).

*Affirmed.*

**Morse, J.,** concurring and dissenting. I agree with the Court regarding all of defendant's statements, except the last statement made at the police station. Where the detainee's initial statement was voluntary but technically obtained in violation of *Miranda,* the relevant inquiry is whether the second statement was voluntary. *Oregon v. Elstad,* 470 U.S. 298, 318 (1985). To make this determination, we examine the totality of the circumstances. See *id.* Applying the same test to determine whether a violation of the public defender statute taints subsequent statements, I would conclude that the statement at the station must be suppressed. Although the statement was spontaneously volunteered, it was made solely to correct and clarify the illegally obtained statements. The situation is unlike *Elstad,* where the United States Supreme Court held that "[a] subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Id.* at 314. Here, defendant had not waived his rights in writing in the interim to comply with the statute. The circumstances here indicate that the taint of the confessions in the cruiser had not dissipated.

I would reverse the trial court's ruling that the statement made at the police station is admissible. I am authorized to state that Justice Johnson joins in this dissent.